UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL GOULD; CHRISTOPHER HART; IRWIN CRUZ; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department; WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department; and DAVID A. PROVENCHER, in his Official Capacity as Chief of the New Bedford Police Department,<br><br>Defendants. | CIVIL ACTION NO.<br><br><br><br><br><br>PRELIMINARY EQUITABLE RELIEF REQUESTED |

**COMPLAINT**

Plaintiffs MICHAEL GOULD; CHRISTOPHER HART; IRWIN CRUZ; and COMMONWEALTH SECOND AMENDMENT, INC., as and for their Complaint against Defendants DANIEL C. O'LEARY; WILLIAM B. EVANS; and DAVID A. PROVENCHER, allege as follows:

1. This suit challenges Defendants' imposition of "sporting," "target," "hunting," and/or "employment" restrictions on handgun licenses. These restrictions prevent Plaintiffs from using handguns for the purpose self-protection, which contravenes "the right of the people to keep and bear arms" that the Second Amendment secures.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

3. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(a) because all of the parties reside in the Eastern Division.

### PARTIES

6. Plaintiff Michael Gould is a citizen and resident of Massachusetts residing in the Town of Brookline, Norfolk County.

7. Plaintiff Christopher Hart is a citizen and resident of Massachusetts residing in the City of Boston, Suffolk County.

8. Plaintiff Irwin Cruz is a citizen and resident of Massachusetts residing in the City of New Bedford, Bristol County.

9. Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

10. Defendant Daniel C. O'Leary ("Chief O'Leary") is sued in his official capacity as Chief of the Brookline Police Department (Norfolk County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131. As detailed herein, Defendant Chief O'Leary has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

11. Defendant William B. Evans ("Commissioner Evans") is sued in his official capacity as Commissioner of the Boston Police Department (Suffolk County), responsible for

issuing handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Commissioner Evans has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.

12. Defendant David A. Provencher ("Chief Provencher") is sued in his official capacity as Chief of the New Bedford Police Department (Bristol County), responsible for issuing handgun licenses pursuant to M.G.L. c. 140, § 131.  As detailed herein, Defendant Chief Provencher has enforced the challenged policies, customs, and practices against Plaintiffs and is in fact presently enforcing the challenged policies, customs, and practices against Plaintiffs.  On information and belief, Defendant Chief Provencher recently passed away.  Rule 25(d) of the Federal Rules of Civil Procedure provides for the automatic substitution of his successor(s).

## CONSTITUTIONAL PROVISIONS

13. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

14. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  District of Columbia v. Heller, 554 U.S. 570, 592 (2008).

15. The Second Amendment guarantees individuals a fundamental right to carry operable handguns in non-sensitive public places for the purpose of self-defense.

16. The Second Amendment "is fully applicable against the States."  McDonald v. Chicago, 561 U.S. 742, 750 (2010).

17. The States retain the ability to regulate the manner of carrying handguns within constitutional parameters; to prohibit the carry of handguns in specific, narrowly defined

sensitive places; to prohibit carrying arms that are not within the scope of Second Amendment protection; and, to disqualify specific, particularly dangerous individuals from possessing guns. However, States may not deny law-abiding citizens the right to carry handguns for protection.

18. The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the Equal Protection Clause, "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988).

## MASSACHUSETTS HANDGUN LICENSING LAWS

19. It is unlawful to possess, use, or carry a handgun unless one holds a License to Carry Firearms ("LTC") issued pursuant to M.G.L. c. 140, § 131. See M.G.L. c. 269, § 10(a); M.G.L. c. 140, §§ 129B-129C.

20. Under M.G.L. c. 140, §§ 121, 131(d) Massachusetts residents apply for LTC's from a designated "licensing authority," which is the head law enforcement officer of the locality in which an individual resides or has a place of business.

21. A person seeking an LTC must meet specified requirements related to, *inter alia*, age, criminal background, and mental fitness. See M.G.L. c. 140, § 131(d)(i)-(x). Furthermore, licensing authorities can deny LTC's to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." See id. Finally, a person must also complete state mandated training. See id. at § 131P. This case does not concern any of these requirements.

22. Rather, this case concerns these Defendants' applications of the independent statutory power to issue LTC's "subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper." M.G.L. c. 140, § 131(a).

23.     A local official's decision to impose such restrictions on an individual's LTC will be upheld so long as it is not arbitrary, capricious, or an abuse of discretion.  See, e.g., Ruggiero v. Police Comm'r of Boston, 18 Mass. App. 256, 259, 464 N.E.2d 104, 107 (1984).

24.     Carrying, using, or possessing a handgun in violation of the restrictions placed on an LTC is grounds for suspension or revocation of the LTC and a fine of $1,000 to $10,000.  See M.G.L. c. 140, § 131(a).

25.     Most Massachusetts localities do not normally place restrictions on LTC's, and the majority of LTC's in force are unrestricted.  However, a minority of Massachusetts localities have policies, customs, or practices of generally or presumptively issuing LTC's subject to "sporting," "target," "hunting," and/or "employment" restrictions, and some other Massachusetts localities apply more *ad hoc* policies, customs, or practices under which some applicants receive unrestricted LTC's, and others receive restrictions, but without any apparent difference in circumstances.

26.     Massachusetts' LTC scheme results in otherwise-qualified, law-abiding citizens of Massachusetts being denied the right to carry a firearm for self-defense, while other, similarly situated residents of Massachusetts are permitted to exercise their right to bear arms to protect themselves.  For example, neighboring localities may adopt different policies regarding unrestricted LTC's, resulting in a citizen's right to bear arms being dependent on whether he or she lives in one locality or the other.  One citizen may be denied the right to carry a firearm for self-defense because local licensing officials refuse to issue unrestricted LTC's, while an otherwise indistinguishable neighbor may be able to obtain an unrestricted LTC if he happens to have a place of business in a locality that does issue unrestricted licenses.  A person may obtain an unrestricted LTC and then, without any apparent cause, lose it or be unable to renew it.  These

examples are not fanciful; on information and belief, they all describe scenarios that have taken place under Massachusetts' LTC scheme.

### DEFENDANTS' APPLICATION OF THE STATUTE AGAINST THE PLAINTIFFS
### CHIEF O'LEARY AND THE BROOKLINE POLICE DEPARTMENT

27.     Plaintiff Michael Gould previously lived in Weymouth, Massachusetts, where he had applied for and obtained an LTC from the Chief of the Weymouth Police Department. Mr. Gould subsequently moved to Brookline. Mr. Gould is a photographer who often carries expensive equipment with him when engaged in private photography work for clients.

28.     In approximately September 2014, Mr. Gould applied to Chief O'Leary of the Brookline Police Department to renew his LTC. Mr. Gould met all applicable requirements for issuance of an LTC. Mr. Gould completed an application form on which he requested that his LTC be issued without restriction.

29.     When Mr. Gould submitted his application, an officer reviewed the form and interviewed him. Mr. Gould specifically stated that he sought an unrestricted LTC so that he could carry a firearm for the defense of himself and his family.

30.     In October 2014 Defendant Chief O'Leary sent Mr. Gould a letter stating that Mr. Gould had not provided sufficient information for an LTC to be issued without a restriction. In response, on October 22, 2014, Mr. Gould contacted Sergeant Malinn of the Brookline Police Department by email and offered to provide any additional information that might be needed. The next day Sergeant Malinn advised Mr. Gould that "I do not believe that additional information would lead to an LTC for All Lawful Purposes." Sergeant Malinn advised Mr. Gould that Chief O'Leary would be willing to issue the renewal LTC subject to "Sporting" and "Employment" restrictions.

31. On November 20, 2014 Chief O'Leary issued Mr. Gould an LTC with the restrictions of "Sporting" and "Employment."

### COMMISSIONER EVANS AND THE BOSTON POLICE DEPARTMENT

32. Plaintiff Christopher Hart previously lived in Connecticut, where he held a "State Permit to Carry Pistols and Revolvers" issued pursuant to § 29-28(b) of the General Statutes of Connecticut. Mr. Hart subsequently moved to Boston. Mr. Hart is the Director of Operations at a Boston restaurant, and in this capacity, he often carries substantial amounts of cash.

33. In 2014, Mr. Hart applied for an LTC from Commissioner Evans. Mr. Hart met all applicable requirements for issuance of an LTC. On his application, Mr. Hart requested that his LTC be issued for all lawful purposes.

34. On July 2, 2014 Commissioner Evans issued Mr. Hart a "Class A" LTC carrying the restriction of "Target & Hunting."

35. In August 2014 Mr. Hart visited the Boston Police Department in person and asked whether it would be possible to have the restriction removed. The officer that Mr. Hart spoke with told him that it might be possible to get an LTC subject to an "Employment" restriction if his employer were willing to submit financial records. Otherwise, the officer said that Commissioner Evans would not remove the restriction, but that there was a possibility he might do so when Mr. Hart applied to renew his LTC in 2019.

### CHIEF PROVENCHER AND THE NEW BEDFORD POLICE DEPARTMENT

36. Plaintiff Irwin Cruz applied for an LTC from Chief Provencher of the New Bedford Police Department in late 2013 or early 2014. Mr. Cruz met all applicable requirements for issuance of an LTC. Mr. Cruz completed an application form on which he requested that his LTC be issued for all lawful purposes. Mr. Cruz specifically noted that he carried a significant amount of cash in connection with his business and submitted a letter from his employer.

37. On February 7, 2014 Chief Provencher issued Mr. Cruz an LTC with the restriction of "Sporting."

38. Mr. Cruz then contacted the New Bedford Police Department and left several messages requesting information or guidance to obtain removal of the restriction. Mr. Cruz left his most recent message in approximately March 2015. Mr. Cruz never received a response.

### INJURY TO THE PLAINTIFFS

39. The restriction of the above individual Plaintiffs' LTC's to "sporting," "target," "hunting," and/or "employment" purposes precludes these Plaintiffs from possessing, using, or carrying handguns for the purpose of self-protection. But for these Plaintiffs' fear that their LTC's would be suspended or revoked and/or that they would be fined, each of these Plaintiffs would possess, use, and carry a handgun for the purpose of self-protection.

40. Plaintiff Comm2A is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A brings this action on its own behalf and on behalf of its members.

41. Plaintiff Comm2A has members and supporters throughout (and beyond) Massachusetts, including members and supporters who hold LTC's that the Brookline, Boston, and New Bedford Police Departments have issued with "sporting," "target," "hunting," and/or "employment" restrictions. Plaintiffs Michael Gould, Chris Hart, and Irwin Cruz are all members of Comm2A. These and other members and supporters of Comm2A would possess, use, and carry handguns for the purpose of self-protection, but they refrain from doing so out of the fear that their LTC's would be suspended or revoked and/or that they would be fined.

42. In addition, Comm2A expends significant resources assisting people who receive restricted LTC's under the authority of M.G.L. c. 140, § 131, including specifically people

receiving restricted licenses from the Brookline, Boston, and New Bedford Police Departments. Both members and supporters of Comm2A and members of the general public have contacted Comm2A as a result of the restriction of their LTC's. Comm2A would not expend its organizational resources to respond to these demands if Defendants did not impose restrictions in the first instance. Comm2A would instead use its organizational resources to pursue other organizational priorities.

43. All of the Plaintiffs' injuries are irreparable because people are entitled to enjoy their constitutional rights in fact.

## COUNT I

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

44. Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with broad and unbounded discretion to impose restrictions on LTC's as any official "deems proper."

45. Defendants have exercised this authority by issuing Plaintiffs LTC's that prohibit them from carrying and using handguns for the purpose of self-defense and have thereby deprived Plaintiffs of their right to keep and bear arms.

46. Defendants have further exercised this authority by adopting policies, customs, and/or practices of issuing LTC's with "sporting," "target," "hunting," and/or "employment" restrictions that prohibit carrying or using handguns for the purpose of self-defense.

47. Defendants have thereby infringed Plaintiffs' rights under the Second Amendment and the Due Process Clause of the Fourteenth Amendment, and Defendants have damaged Plaintiffs in violation of 42 U.S.C. § 1983.

## COUNT II

### (U.S. Const., Amends. II & XIV, 42 U.S.C. § 1983)

48. Massachusetts' LTC licensing scheme, and in particular M.G.L. c. 140, § 131(a) & (d), vests local licensing officials with broad and unbounded discretion to impose restrictions on LTC's as any official "deems proper."

49. As a result of this broad and unbounded discretion and Defendants' implementation of it, the ability of law-abiding citizens of Massachusetts to exercise their fundamental right to bear arms often turns on arbitrary considerations, such as whether an individual resides on the correct side of a local boundary line, has a lot of cash, or has a place of business in another locality that issues unrestricted LTC's.

50. The aforesaid statute, and Defendants' implementation of this statute, violates Plaintiffs' Second Amendment right to keep and bear arms and their Fourteenth Amendment rights to due process and equal protection of the laws, and damages Plaintiffs in violation of 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i. declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," "employment," and similar purposes;

ii. declaratory judgment that Defendants' policies, customs, and/or practices implementing M.G.L. c. 140, § 131(a) & (d) violate the Second Amendment to the extent they allow Defendants to prohibit qualified private citizens from carrying loaded and operable handguns for self-protection by restricting licenses to carry handguns to "sporting," "target," "hunting," "employment," and similar purposes;

iii. declaratory judgment that M.G.L. c. 140, § 131(a) & (d) violate the Equal Protection Clause to the extent they allow similarly situated, law-abiding

       citizens to be treated differently for purposes of exercising their fundamental right to carry a loaded and operable handgun for self-protection, in a manner not sufficiently tailored to a sufficiently important government interest;

iv.    injunctive relief directing Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who receive notice of the injunction, to issue to Plaintiffs Michael Gould; Chris Hart; and Irwin Cruz LTC's that do not carry "sporting," "target," "hunting," or "employment" restrictions, nor any other similar restrictions that would preclude the carry and use of handguns for self-protection;

v.    injunctive relief precluding Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who receive notice of the injunction, from issuing LTC's with "sporting," "target," "hunting," or "employment" restrictions, or with any other similar restriction that would preclude the use of handguns for self-protection;

vi.    such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

vii.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: February 4, 2016

               Respectfully submitted,

               THE PLAINTIFFS,

               By their attorneys,

               /s/ Patrick M. Groulx
               Patrick M. Groulx, Esq.
               BBO No. 673394
               Grolman, LLP
               321 Columbus Avenue
               Boston, Massachusetts 02116
               Tel: 617.859.8966
               Fax: 617.859.8903
               patrick@grolmanllp.com

David D. Jensen, Esq.
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com
Application for Admission *Pro Hac Vice* Forthcoming

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 4, 2016.

        /s/ Patrick M. Groulx
Patrick M. Groulx