**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 1:16-cv-10181-FDS**

| |
|---|
| **DANNY WENG, CHRISTOPHER HART, MARKUS VALLASTER, SARAH ZESCH, JOHN STANTON, MICHAEL GOULD, and COMMONWEALTH SECOND AMENDMENT, INC.,** <br><br>      **Plaintiffs,** <br><br>v. <br><br>**WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department, and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department,** <br><br>      **Defendants.** |

## DEFENDANT WILLIAM B. EVANS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

### I.  INTRODUCTION

Defendant William B. Evans ("Commissioner Evans") hereby moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings and respectfully requests that the Court dismiss with prejudice all counts against him in Plaintiffs' Amended Complaint, dated and filed April 14, 2016, ("Amended Complaint" or "Amd. Compl."). As reasons therefor, Commissioner Evans submits that Plaintiffs' claims are not ripe, and that Plaintiffs fail to state any as-applied or facial claims pursuant to the Second or Fourteenth Amendments.

While the full scope of the Second Amendment has yet to be determined in this circuit, First Circuit courts have nevertheless identified the core Second Amendment right of self-defense in the home, and they have also plainly established certain conduct that is <u>unprotected</u> by the Second Amendment. Plaintiffs in the instant case contest restrictions on their licenses to

carry firearms ("licenses"), but even with these restrictions, Plaintiffs' licenses fully protect their core Second Amendment rights. What is more, Plaintiffs assert a right to unrestricted Class A licenses, which would permit them to carry concealed firearms in public and possess high-capacity firearms. Courts have held that <u>neither</u> of these activities is protected by the Second Amendment.[1] Therefore, although the scope of the Second Amendment outside the home, if any, has not been determined, case law provides sufficient ground upon which the Court can conclusively deny the Second Amendment claims in this case. Plaintiffs' equal protection and due process arguments likewise fail for reasons described more fully below. Finally, none of Plaintiffs' claims are ripe because there is no allegation that Plaintiffs have exhausted their remedies under Mass. Gen. Laws c. 140, § 131. For all these reasons, Commissioner Evans respectfully requests that the Court dismiss with prejudice all Plaintiffs' claims against him.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Under Massachusetts law, Class A licenses are the least restrictive firearms licenses available. <u>Morin v. Leahy</u>, --- F. Supp. 3d ---, 2016 WL 2901732, at *4, 5 (D. Mass. May 18, 2016). They are issued pursuant to Mass. Gen. Laws c. 140, §§ 131 (a) and (d). The holder of an unrestricted Class A license is entitled to possess high-capacity firearms and to carry concealed firearms in public. <u>Hightower v. City of Boston</u>, 693 F.3d 61, 66 (1st Cir. 2012).

Mass. Gen. Laws c. 140, § 131 ("Section 131") also provides for restrictions on the issuance of firearms licenses. As this Court previously explained, Section 131(d) requires the licensing authority to conduct a "two-step inquiry to determine the applicant's eligibility." <u>Davis v. Grimes</u>, 9 F. Supp. 3d 12, 16 (D. Mass. 2014) (citing <u>Ruggiero v. Police Comm'r</u>, 18 Mass App. Ct. 256, 259 (1984)); <u>Pineiro v. Gemme</u>, 937 F. Supp. 2d 161, 167 (D. Mass. 2013) (same).

---

[1] Although possession of high-capacity firearms is not protected by the Second Amendment, Plaintiffs do not allege that the licenses issued by Commissioner Evans in any way restrict their ability to possess high-capacity firearms. <u>See generally</u> Amd. Compl.

First, the licensing authority assesses "the applicant's personal suitability for gun ownership." Pineiro, 937 F. Supp. 2d at 167; Section 131(d). This "suitability" requirement is not at issue in the instant case. Second, the licensing authority is required to consider whether the applicant has a "proper purpose" or "reason" for carrying a firearm. Davis, 9 F. Supp. 3d at 16-17 (citing Ruggiero, 18 Mass App. Ct. at 259); Pineiro, 937 F. Supp. 2d at 167 (same). Section 131(d) requires that the applicant demonstrate "good reason to fear injury" to his person or property "or . . . any other reason, including the carrying of firearms for use in sport or target practice only[.]"

Even when an applicant meets these requirements, Section 131(a) provides that the licensing authority may impose "such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper." Davis, 9 F. Supp. 3d at 17 (quoting Section 131(a)). "Pursuant to that provision, the licensing authority may restrict a license to those uses for which the authority determines there to be an appropriate reason, even if it is not the reason proposed by the applicant." Davis, 9 F. Supp. 3d at 17; see also Pineiro, 937 F. Supp. 2d at 167.

Plaintiffs filed their initial Complaint in this matter on February 4, 2016. ECF No. 1. The Amended Complaint was filed on April 14, 2016. ECF No. 7. In their Amended Complaint, Plaintiffs take issue with certain restrictions imposed on their licenses. As to Commissioner Evans,[2] Plaintiffs allege that he issued licenses carrying "Target & Hunting" restrictions to Plaintiffs Weng, Hart, Vallaster, Zesch, and Stanton. Amd. Compl. at ¶¶ 29, 35, 40, 46, 49, 63. Plaintiffs further allege that Commissioner Evans adopted a policy, custom, or practice of issuing licenses with such restrictions. Id. at ¶ 64. In sum, Plaintiffs challenge the constitutionality of

---

[2] Under 42 U.S.C. § 1983, a lawsuit against Commissioner Evans in his official capacity is treated as a lawsuit against the City of Boston itself. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"). Among other requirements, Plaintiffs must identify a policy or custom of the City that violates their rights. Los Angeles Cty. v. Humphries, 562 U.S. 29, 39 (2010).

these and other restrictions that would prevent them from possessing unrestricted Class A licenses.[3]  Id. at ¶¶ 62-68, Prayer for Relief, at ¶¶ i-v.

The Amended Complaint contains two specific counts against Defendants.  The first count alleges pursuant to 42 U.S.C. § 1983 that Defendants violated Plaintiffs' rights to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution.  Id. at ¶¶ 62-65.  The second count, likewise brought pursuant to 42 U.S.C. § 1983, alleges that Defendants violated Plaintiffs' rights to keep and bear arms, as well as Plaintiffs' rights to due process and equal protection under the Fourteenth Amendment.  Id. at ¶¶ 66-68.  On June 30, 2016, Commissioner Evans filed his Answer to Plaintiffs' Amended Complaint.  ECF No. 15.  Defendant Chief Daniel C. O'Leary ("Chief O'Leary") filed his Answer that same day. ECF No. 16.

### III.   STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." Pineiro v. Gemme, 937 F. Supp. 2d 161, 168 (D. Mass. 2013) (quoting Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)).  "[T]o survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face." Id. at 168-69.  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 169 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Therefore, a defendant's motion for judgment on the pleadings will be granted where "plaintiff's well-pleaded facts do not 'possess enough heft to show that plaintiff is entitled to relief.'" Id. (quoting Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008)).

---

[3] Plaintiff Commonwealth Second Amendment, Inc. alleges derivative claims, i.e., that the rights of its members, including the individual Plaintiffs, are denied by these restrictions and that it expends resources assisting persons with restricted licenses.  Amd. Compl. at ¶ 59-60.

4

## IV. ARGUMENT

### A. Plaintiffs' Challenge Is Not Ripe Because Plaintiffs Do Not Allege That They Have Exhausted Their Remedies Under Section 131.

Plaintiffs' claims against Commissioner Evans are not ripe because Plaintiffs do not allege that they have exhausted their remedies under Section 131. "Ripeness is an Article III jurisdictional requirement" which protects against "unnecessary constitutional decisions" by ensuring that cases are fully developed before they are decided. Hightower v. City of Boston, 822 F. Supp. 2d 38, 51 (D. Mass. 2011) ("Hightower I") (internal quotations omitted), aff'd, 693 F.3d 61, 87 (1st Cir. 2012). In assessing ripeness, courts will inquire as to (1) "fitness," that is, "questions of finality, definiteness, and the need for further factual development," and (2) "hardship," that is, "whether the challenged action creates a direct and immediate dilemma for the parties." Id. at 52 (internal quotations omitted); see also O'Connell v. Walsh, No. 1:15-cv-10096-DJC, 2015 WL 9581735, at *2-3 (D. Mass. Dec. 30, 2015). Plaintiffs' claims must ordinarily satisfy both requirements for ripeness to be established. Hightower I, 822 F. Supp. 2d at 52.

In the instant case, Section 131 provides a process for contesting restrictions imposed on licenses to carry. Specifically, Section 131(f) provides that:

> Any applicant or holder aggrieved by a . . . restriction placed on a license . . . may . . . in the case of a restriction, any time after a restriction is placed on the license pursuant to this section, file a petition to obtain judicial review in the district court having jurisdiction in the city or town in which the applicant filed the application or in which the license was issued. If after a hearing a justice of the court finds that there was no reasonable ground for . . . restricting the license and that the petitioner is not prohibited by law from possessing a license, the justice . . . may order the licensing authority to remove certain restrictions placed on the license.

Further judicial review of a state district court's decision is also available. <u>Hightower v. City of Boston</u>, 693 F.3d 61, 67 (1st Cir. 2012) ("<u>Hightower II</u>") (quoting <u>Levine v. Chief Justice of the Dist. Court</u>, 434 Mass. 1014, 1014 (2001)).

The availability of these remedies has been recognized by the federal courts. <u>See</u> <u>id.</u> at 67 n.2 ("[A]n applicant may also petition for review of a decision to issue a restricted, as opposed to unrestricted, license."); <u>id.</u> at 76 (finding that certain disputes of fact may be resolved "under the statute's provision for judicial review, an option that [the plaintiff] declined to use.").

There is no allegation that Plaintiffs sought judicial review under Section 131(f). <u>See generally</u> Amd. Compl. Because the Plaintiffs are not alleged to have availed themselves of this remedy, which is specifically provided in the challenged statute, there exist "questions of finality, definiteness, and the need for further factual development." <u>See</u> <u>Hightower I</u>, 822 F. Supp. at 52, 54-55 (internal quotations omitted). Therefore, the Court should treat Plaintiffs' claims as unripe. <u>See</u> <u>O'Connell</u>, 2015 WL 9581735, at *3 (finding hardship showing insufficient to overcome the plaintiff's "weak showing on the fitness prong") (quoting <u>McInnes-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 73 (1st Cir. 2003)).

For the foregoing reasons, Commissioner Evans respectfully requests that the Court dismiss with prejudice Plaintiffs' claims against him for Plaintiffs' failure to exhaust available state law remedies.

### B. **Plaintiffs Fail To State A Claim Under the Second Amendment.**

#### 1. **Plaintiffs' licenses fully protect and even go beyond their core Second Amendment rights.**

Plaintiffs' restricted licenses protect and even go beyond the full scope of the Second Amendment rights recognized in the First Circuit. Under the Second Amendment to the U.S. Constitution, "[a] well regulated Militia, being necessary to the security of a free State, the right

6

of the people to keep and bear Arms, shall not be infringed." The U.S. Supreme Court has held that the Second Amendment confers an individual right and that this right can be applied to state and local regulation of firearms. McDonald v. City of Chicago, 561 U.S. 742, 750 (2010); District of Columbia v. Heller, 554 U.S. 570, 635 (2008); see also Morin v. Leahy, --- F. Supp. 3d ---, 2016 WL 2901732, at *3 (D. Mass. May 18, 2016).

While the full scope of the Second Amendment has yet to be defined, the First Circuit has nevertheless held "the possession of operative firearms for use in defense of the home" to be the "core" of the Second Amendment. Hightower II, 693 F.3d at 72; see also Powell v. Tompkins, 783 F.3d 332, 347-48 (1st Cir. 2015) (declining to hold that "the limited Second Amendment right as articulated in Heller extends outside the vicinity of the home" and "flatly reject[ing]" argument that Heller and McDonald establish a right that "encompasses one's 'person' unrelated to the home."), cert. denied, 136 S. Ct. 1448 (2016).

Even with the challenged restrictions, Plaintiffs' licenses protect their core Second Amendment rights because they allow Plaintiffs the right to keep firearms in their homes for the purpose of self-defense. Hightower I, 822 F. Supp. 2d at 63. Commissioner Evans imposed only "Target & Hunting" restrictions on the licenses of certain individual Plaintiffs. Amd. Compl. at ¶¶ 29, 35, 40, 46, 49. Plaintiffs nowhere allege that these restrictions impinge upon their ability to possess and carry firearms in their homes. See generally Amd. Compl. On the contrary, Plaintiffs' licenses permit such use. See Davis v. Grimes, 9 F. Supp. 3d 12, 17-18 (D. Mass. 2014); Pineiro v. Gemme, 937 F. Supp. 2d 161, 173 (D. Mass. 2013). Indeed, even the most restrictive license issued under the statute, the FID card, "allows the holder to own, transfer, or possess a firearm in his residence or place of business[.]" Commonwealth v. Gouse, 461 Mass. 787, 799 n.14 (2012); see also Hightower II, 693 F.3d at 65. What is more, Plaintiffs' licenses

provide them with the additional privileges of carrying their firearms outside the home for purposes of target shooting and hunting.  See Davis, 9 F. Supp. 3d at 17-18; Pineiro, 937 F. Supp. 2d at 173.

The scope of the Second Amendment outside the home is terra incognita because neither the U.S. Supreme Court nor the First Circuit has directly ruled on the issue.  Davis, 9 F. Supp. 3d at 26-27; Pineiro, 937 F. Supp. 2d at 172-73.  Nevertheless, the First Circuit's holding in Hightower II provides a helpful signpost; it identifies specific conduct that is protected by the Second Amendment, and its definition marks the outer boundary of protected conduct recognized in the First Circuit.  Hightower II, 693 F.3d at 72.  As described above, the licenses issued to Plaintiffs by Commissioner Evans fully protect and even go beyond their core Second Amendment rights.  See Davis, 9 F. Supp. 3d at 17-18; Pineiro, 937 F. Supp. 2d at 173.  Therefore, Commissioner Evans respectfully requests that this Court dismiss all Plaintiffs' Second Amendment claims against him.

### 2. The Second Amendment does not entitle Plaintiffs to unrestricted Class A licenses.

Plaintiffs' Second Amendment claims must fail because the Second Amendment does not entitle Plaintiffs to unrestricted Class A licenses.  In addition to establishing the core of the Second Amendment, the First Circuit has also conclusively held certain conduct to be unprotected by the Second Amendment.  In particular, the Second Amendment does not entitle a person to an unrestricted Class A license because there is no Second Amendment right to carry concealed firearms outside the home or to possess unusual or dangerous firearms.

The Second Amendment does not confer a right to carry concealed firearms.  In Heller, the U.S. Supreme Court stated that "laws prohibiting the carrying of concealed weapons are an example of longstanding restrictions that are presumptively lawful under the Second

Amendment." Hightower II, 693 F.3d at 73 (internal marks and quotations omitted). The First Circuit also explicitly held that there is no Second Amendment right to carry a concealed weapon outside the home. Id. at 72-73. The Massachusetts Supreme Judicial Court recently reached the same conclusion. Chief of Police v. Holden, 470 Mass. 845, 853 (2015). There is likewise no Second Amendment right to possess unusual or dangerous weapons such as high-capacity firearms.[4] See Heller, 554 U.S. at 627; Hightower II, 693 F.3d at 71; United States v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009); Hightower I, 822 F. Supp. 2d at 62.

Unrestricted Class A licenses confer privileges even beyond the scope of what the Second Amendment protects. Indeed, an unrestricted Class A license entails privileges that are unprotected by the Second Amendment. Class A licenses are the least restrictive licenses available under the Massachusetts scheme, and an unrestricted Class A license permits its holder to possess high-capacity firearms and even to carry concealed and loaded firearms in public. Hightower II, 693 F.3d at 66 (citing Section 131(a)); Morin, 2016 WL 2901732, at *4, 5. It follows that there is no Second Amendment right to an unrestricted Class A license, and the case law compels this conclusion in no uncertain terms. The District Court held in Hightower I that "as a matter of law . . . post-Heller the Second Amendment cannot be interpreted to confer a right to an unrestricted Class A license, which permits both concealed carrying and the possession of high-capacity firearms[.]" 822 F. Supp. 2d at 54; see also Morin, 2016 WL 2901732, at *7. Moreover, the Massachusetts Supreme Court recently concluded that "the denial of a Class A license to carry a concealed firearm . . . falls outside the Second Amendment[.]" Holden, 470 Mass. at 853.

---

[4] As noted above, although possession of high-capacity firearms is not protected by the Second Amendment, Plaintiffs do not allege that the licenses issued by Commissioner Evans in any way restrict their ability to possess high-capacity firearms. See generally Amd. Compl.

Throughout their Amended Complaint, Plaintiffs make plain that they seek unrestricted Class A licenses. E.g., Amd. Compl. at ¶¶ 25-26, 67. Plaintiffs challenge statutory provisions that apply only to Class A licenses. Id. at Prayer for Relief, ¶¶ i-iii; Section 131(a) & (d).[5] What is more, the express language in Paragraphs 25, 26, and 67 of the Amended Complaint shows that Plaintiffs seek "unrestricted" licenses. Most importantly, in addition to challenging their own restrictions, Plaintiffs also seek to prohibit the imposition of any "similar" restrictions. Amd. Compl. at Prayer for Relief, ¶¶ i, ii, iv, v.

It is true, as this Court has observed, that the First Circuit has not decided the scope of the Second Amendment outside the home, Davis, 9 F. Supp. 3d at 27, but it is nevertheless clear from the case law that the Second Amendment does not extend as far as Plaintiffs would have it. The case law demonstrates that Plaintiffs are not entitled under the Second Amendment to the unrestricted Class A licenses they seek. Therefore, Commissioner Evans respectfully requests that this Court dismiss with prejudice all Plaintiffs' Second Amendment claims against him.

### 3. The restrictions imposed by Commissioner Evans survive heightened or intermediate scrutiny.

The restrictions imposed upon Plaintiffs' licenses by Commissioner Evans survive heightened or intermediate scrutiny. In assessing Second Amendment claims, this Court previously explained that "some form of heightened level of scrutiny appears to be appropriate." Davis, 9 F. Supp. 3d at 28 n.19. The Court pointed out that the First Circuit "has not . . . expressly adopted an intermediate-scrutiny standard," but looked to a First Circuit decision that articulated the relevant standard as "some form of 'strong showing' necessitating a substantial relationship between the restriction and an important governmental objective." Id. at 27-29

---

[5] Class B licenses are no longer issued, though existing Class B licenses remain in effect. 2014 Mass. Acts c. 284, § 101 ("An Act Relative to the Reduction of Gun Violence"), available at, https://malegislature.gov/Laws/SessionLaws/Acts/2014/Chapter284; see also Powell, 783 F.3d at 338 n.2.

(quoting United States v. Booker, 644 F.3d 12, 25 (1st Cir. 2011)); see also Morin, 2016 WL 2901732, at *4 (noting in the context of unrestricted Class A licenses, which allow the carrying of "loaded, high-capacity, concealed firearms in public," that "the standard differs depending on the conduct that is burdened").[6]

Restrictions imposed pursuant to Section 131 plainly meet this standard. The U.S. Supreme Court "has recognized that the government interest in public safety is both 'compelling' . . . and 'significant.'" Holden, 470 Mass. at 858 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987) and Schenck v. Pro-Choice Network of W.N.Y., 519 U.S. 357, 376 (1997)). The government interests safeguarded by Section 131 are classified as just such compelling and significant interests in public safety. Id. at 858-59. The Supreme Judicial Court explained the means and purpose of Section 131 as follows:

> The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons. A wide range of methods has been adopted by the Legislature to accomplish this goal, including the requirement of licenses for the sale or possession of firearms and ammunition . . . From a realization that prevention of harm is often preferable to meting out punishment after an unfortunate event, G.L. c. 140, § 131, was enacted as a first-line measure in the regulatory scheme. It has been said about § 131 that it was intended to have local licensing authorities employ every conceivable means of preventing deadly weapons in the form of firearms [from] coming into the hands of evildoers.

---

[6] The Massachusetts Supreme Judicial Court has adopted a rational-basis standard in cases like the instant one where the asserted right falls outside the scope of the Second Amendment. Holden, 470 Mass. at 853-54; Chardin v. Police Comm'r, 465 Mass. 314, 324 (2013); cf. Davis, 9 F. Supp. 3d at 28 n.19 (stating that Heller disclaimed rational-basis standard). The Supreme Judicial Court reasoned that because unrestricted Class A licenses permit concealed carrying of firearms, "the denial of a Class A license to carry a concealed firearm . . . falls outside the Second Amendment and is subject only to rational basis analysis[.]" Holden, 470 Mass. at 853; see also Hightower II, 693 F.3d at 73 ("[L]aws prohibiting the carrying of concealed weapons are . . . presumptively lawful under the Second Amendment.") (internal marks and quotations omitted); Hightower I, 822 F. Supp. 2d at 62 ("Whatever Second Amendment review is, it must permit both laws that flatly prohibit the carrying of concealed weapons and laws that flatly prohibit the carrying of dangerous and unusual weapons[.]"). If rational basis scrutiny applies, then the proper test is "whether the statute bears a reasonable relation to a permissible legislative objective." Holden, 470 Mass. at 853 (internal quotations omitted).

11

Ruggiero v. Police Comm'r, 18 Mass. App. Ct. 256, 258-59 (1984) (internal quotations omitted) (upholding refusal to remove target and hunting restriction as valid exercise of statutory discretion under Section 131); see also Morin, 2016 WL 2901732, at *6; Davis, 9 F. Supp. 3d at 16 n.2.  Even more closely on point is this Court's finding in Pineiro, when contemplating similar license restrictions under Section 131, that "[t]he legitimate government purpose offered by the city is protecting the safety of its citizens, which is perhaps the most important of government functions."  Pineiro, 937 F. Supp. 2d at 176.

Therefore, the restrictions placed on Plaintiffs' licenses survive heightened or intermediate scrutiny, and Commissioner Evans respectfully requests that the Court dismiss Plaintiffs' Second Amendment claims against him.

### C. Plaintiffs Fail To State An Equal Protection Claim.

Plaintiffs' equal protection claim must fail because Plaintiffs do not establish disparate treatment, because Plaintiffs are not part of a suspect or quasi-suspect class, and because Commissioner Evans' actions survive rational basis scrutiny.  The Fourteenth Amendment to the U.S. Constitution provides for "equal protection of the laws."  In order to allege an equal protection violation, a plaintiff must "attempt to demonstrate that [he] was treated differently from other similarly situated individuals."  Hightower II, 693 F.3d at 83 n.21 (citing Kuperman v. Wrenn, 645 F.3d 69, 77-78 (1st Cir. 2011)); accord Pineiro, 937 F. Supp. 2d at 175-76.  As this Court explained, once disparate treatment is established, it is then assessed under one of three categories of means-end analysis:

> The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny; differential treatment based on quasi-suspect classifications (gender or illegitimacy) is subject to intermediate scrutiny; and differential treatment based on all other classifications simply must survive a rational basis inquiry.

Pineiro, 937 F. Supp. 2d at 176.

Plaintiffs do not allege disparate treatment by Commissioner Evans. On the contrary, Plaintiffs' allegations depend entirely upon the application of the state statute by other actors and municipalities outside Commissioner Evans' control. The substance of Plaintiffs' equal protection claim is that they were treated differently from qualified license applicants in other municipalities because other municipalities may apply Section 131 differently. See Amd. Compl. at ¶¶ 25-26. But Plaintiffs decline to specifically allege the identities of these other municipalities or any persons applying for licenses there. See id. Even if they had identified such persons, however, Commissioner Evans is only permitted to issue licenses to "[a]ny person residing or having a place of business" in Boston. Section 131(d); see also Mass. Gen. Laws c. 140, § 121 (defining "licensing authority"). Plaintiffs cannot allege that Commissioner Evans has established a municipal policy of favoring applicants outside his licensing jurisdiction. See Los Angeles Cty. v. Humphries, 562 U.S. 29, 39 (2010). But Plaintiffs' allegations appear to rest on just such a claim, and therefore they cannot establish disparate treatment by Commissioner Evans. See Amd. Compl. at ¶¶ 25-26.

Even assuming that disparate treatment is alleged (which it is not), Plaintiffs nowhere allege that they are members of any suspect or quasi-suspect classification. See id. at ¶¶ 25-26, 66-68; cf. Pineiro, 937 F. Supp. 2d at 176. Therefore, the imposed restrictions and the denial of unrestricted Class A licenses are subject only to rational basis inquiry. Pineiro, 937 F. Supp. 2d at 176. As described in Section B.3, supra, Commissioner Evans' actions survive heightened or intermediate scrutiny. Therefore, they necessarily satisfy the lower standard of rational basis scrutiny.

13

Because Plaintiffs have not alleged disparate treatment or membership in a suspect or quasi-suspect class, and because Commissioner Evans' actions survive rational basis scrutiny, Commissioner Evans respectfully requests that the Court dismiss with prejudice Count II of Plaintiffs' Amended Complaint insofar as it applies to Commissioner Evans.

### D. **Plaintiffs Fail To State A Due Process Claim.**

Plaintiffs fail to state a due process claim because Section 131 fully protects Plaintiffs' due process rights by providing state court judicial review of license restrictions.  In Count II, Plaintiffs' Amended Complaint asserts that Commissioner Evans' application of Section 131 violates Plaintiffs' "Fourteenth Amendment rights to due process[.]"  Amd. Compl., at ¶ 68.  In order to allege a procedural due process violation, Plaintiffs must allege that they were deprived of a protected interest "without constitutionally adequate process."  Hightower I, 822 F. Supp. 2d at 56 (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006)).  Even so, "due process is flexible and calls for such procedural protections as the particular situation demands."  Id.  (quoting Aponte-Torres, 445 F.3d at 56).

Plaintiffs' Amended Complaint alleges that Commissioner Evans' statutory discretion is "broad and unbounded" and that his licensing decisions turn on certain "arbitrary considerations."[7]  Amd. Compl. at ¶¶ 66-67.  As a matter of law, however, there are limits on Commissioner Evans' statutory discretion.  Section 131(f) provides that anyone may contest the imposition of a restriction on his license by filing a petition in a state district court.  The district

---

[7] Among these allegedly "arbitrary" considerations is the municipality in which the applicant resides or does business.  Amd. Compl. at ¶ 67.  By statute, Commissioner Evans is only permitted to issue licenses to "[a]ny person residing or having a place of business" in Boston.  Section 131(d); see also Mass. Gen. Laws c. 140, § 121 (defining "licensing authority").  Therefore, this ground is not arbitrary; on the contrary, it is a statutory limit on the authority that Plaintiffs allege in the preceding paragraph to be "broad and unbounded."  Amd. Compl. at ¶ 66.  Plaintiffs' due process claim depends upon allegations that this distinction is arbitrary, and therefore their claim must be dismissed.  Amd. Compl. at ¶ 67.

court, "after a hearing," may order the restriction removed if it finds that there was "no reasonable ground" for restricting the license. Section 131(f).

The Supreme Judicial Court recently held that "Section 131(f) affords prompt, comprehensive postdeprivation review" that satisfies the requirements of due process. Holden, 470 Mass. at 861-63. The First Circuit reached this same conclusion in its Hightower decision. Hightower II, 693 F.3d at 86-87. In particular, the First Circuit noted that Section 131(f) provides an "an evidentiary hearing" before a state court "where the aggrieved individual may introduce evidence to demonstrate that the licensing decision was erroneous," including "new evidence." Id. at 87. The state court employs a "widely accepted" standard of review and can order the removal of restrictions found to be "arbitrary" or "capricious." Id. Therefore, as a matter of law, Section 131(f) provides a concrete procedural limit on Commissioner Evans' discretion that satisfies due process. What is more, the standard applied in that forum is specifically designed to remedy "arbitrary and capricious" decisions. Id. at 86-87. Further judicial review of the state district court's decision is also available. Id. at 67 (quoting Levine v. Chief Justice of the Dist. Court, 434 Mass. 1014, 1014 (2001)). Nevertheless, there is no allegation in Plaintiffs' Amended Complaint that any Plaintiffs pursued this relief. See generally Amd. Compl.

Because Commissioner Evans' issuance of restricted licenses was subject to prompt, comprehensive judicial review to overturn any arbitrary or capricious decision, Commissioner Evans respectfully requests that this Court dismiss with prejudice Count II of Plaintiffs' Amended Complaint insofar as it applies to him.

### E. Plaintiffs Fail To State A Facial Challenge To Mass. Gen. Laws c. 140 §§ 131(a) And (d).

Plaintiffs' facial challenge to Mass. Gen. Laws c. 140, §§ 131(a) and (d) must fail because the statute has a plainly legitimate sweep. Plaintiffs argue that Sections 131(a) and (d) violate the Second and Fourteenth Amendments insofar as they permit Defendants to impose restrictions or deny otherwise qualified citizens from obtaining unrestricted licenses. See Amd. Compl. at ¶¶ 62-68, Prayer for Relief, at ¶¶ i, iii.

Facial challenges are strongly disfavored, and Plaintiffs bear the high burden of establishing "that no set of circumstances exists under which the Act would be valid" or at least "that the statute lacks any plainly legitimate sweep." See Hightower II, 693 F.3d at 76-78, 77 n.13 (internal quotations omitted); Holden, 470 Mass. at 859-60. As in Hightower II, Plaintiffs attack the statute for "confer[ring] too much discretion" on the licensing authority, and Plaintiffs' attack fails for the same reason; that is, Plaintiffs' allegations "do[] not establish that there is no 'plainly legitimate sweep' of circumstances where an applicant may properly be denied" an unrestricted license. See Hightower II, 693 F.3d at 78.

On the contrary, the Courts have explicitly described a number of legitimate restrictions that may be imposed on firearms licenses. The First Circuit held in Hightower II that Section 131(d)'s suitability requirement had a plainly legitimate sweep. Id. What is more, complete prohibitions on the concealed carrying of firearms are legitimate under the Second Amendment. Id. at 73. Restrictions on the possession of high-capacity firearms are also legitimate. See Heller, 554 U.S. at 627; Hightower II, 693 F.3d at 71; Rene E., 583 F.3d at 12; Hightower I, 822 F. Supp. 2d at 62. Therefore, a restriction imposed pursuant to Sections 131(a) and (d) is perfectly legitimate insofar as it restricts such conduct. But we need not deal in hypotheticals. As described in detail in Section B, supra, the restrictions imposed on Plaintiffs'

16

own licenses are perfectly constitutional. Therefore, as in Hightower II, the failure of Plaintiffs' own as-applied claims showcases the legitimate sweep of the statute. 693 F.3d at 78.

Because the statute has a plainly legitimate sweep, Plaintiffs' facial challenge to Sections 131(a) and (d) cannot survive. For these reasons, Commissioner Evans respectfully requests that the Court deny with prejudice Counts I and II of Plaintiffs' Amended Complaint.

## V. CONCLUSION

For all the foregoing reasons, Commissioner Evans respectfully requests that the Court dismiss with prejudice all counts against him in Plaintiffs' Amended Complaint, dismiss him as a party to the case, and deny Plaintiffs' requested relief.

[*Signature on next page*]

Dated:  January 27, 2017

Respectfully submitted,

WILLIAM B. EVANS,
in his official capacity as Commissioner of the
Boston Police Department,

By his attorneys:

Eugene L. O'Flaherty,
Corporation Counsel


/s/ Matthew M. McGarry
Matthew M. McGarry (BBO# 678363)
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4042
matthew.mcgarry@boston.gov

Peter M. Geraghty (BBO# 664197)
Special Assistant Corporation Counsel
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza
Boston, MA 02120
(617) 343-4550
peter.geraghty@pd.boston.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2017, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Matthew M. McGarry
Matthew M. McGarry