

*The Commonwealth of Massachusetts*

*Executive Office of Public Safety*

*One Ashburton Place*

*Boston, Massachusetts 02108*

Argeo Paul Cellucci
Governor

Kathleen M. O'Toole
Secretary

*(617) 727-7775*

## MEMORANDUM

**TO:** Ross Rodino,
Governor's Legislative Office

**FR:** Beth Barry,
Legislative Director

**DA:** July 21, 1998

**RE:** Senate 2276

**CC:** Maureen Hogan, Deputy Legal Counsel
Sara Lombardi, Director of Legislative Research
Office of the Governor's Legal Counsel

---

**Senate 2276: An Act Relative to Gun Control in the Commonwealth.**

**Section 1:** Criminal History Systems Board: (Technical Amendment) provides that the rules and regulations of the Executive Director of the Criminal History Systems Board (CHSB), relating to firearm information and its dissemination, shall be extended to the new sections 131K through 131P of Chapter 140.

**Section 2:** Establishes a Firearms Records Keeping Trust Fund that would receive one half of all licensing fees for use in conducting background checks and improving the state's firearms record keeping system. Cities and towns would retain the other 50% of all fee revenue. Sets up a grant program to be administered by EOPS for local licensing authorities for the acquisition of information technology hardware and software necessary for the implementation of this legislation. CHSB and the State Police would also receive administrative and personnel costs from this fund, not to exceed a total of $400,000 in any fiscal year.

**Section 3:** Local License Fees. Provides that statutory fees relating to the application and renewal of FID cards, Licenses to Carry, and Permits to Purchase may not be superseded by fees set by the local licensing authorities.

**Section 4:** This is a technical amendment which strikes section 200 of chapter 11 of the General Laws dealing with weapons related injury reporting by DPH. Section 200 is made moot by section 5 of this bill.

**Section 5:** Requires State Police to make available to DPH reports regarding gunshot wounds, significant burns (5% of body) and crime related knife/sharp object wounds.

**Sections 6 and 7:** Amends section 11 of chapter 131 to provide that any individual issued a FID card or a license to carry firearms, (any class) will be automatically qualified to receive a sporting, hunting, fishing or trapping license.

**Section 8:** This is a technical change that makes the weapons-related definition section applicable to the new sections 131K through 131P of Chapter 140.

This section also removes the definition of "Firearm" covert weapons that are disguised as common accessories (i.e. pens, cigarette packs and lighters, key chains, etc.) or that are undetectable as weapons by x-rays and metal detectors.

Adds the following new definitions:

**Ammunition:** cartridges or cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun. It shall also mean tear gas cartridges, chemical mace or any device or instrument which contains or emits a liquid, gas, powder or any other substance designed to incapacitate.
**Assault Weapon:** same definition as a semiautomatic assault weapon as defined in the Federal Public Safety and Recreational Firearms Use Protection Act.
**Conviction:** a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed.
**Gunsmith:** any person who engages in the business of repairing, altering, cleaning, polishing, engraving, blueing or performing any mechanical operation of any firearm, rifle, shotgun or machine gun.
**Imitation firearm:** any weapon which is designed t, manufactured or altered in such a way as to render it incapable of discharging a shot or bullet.
**Large Capacity Weapon:** assault weapon or any weapon capable of firing more than 10 rounds without reloading; and more than 5 shells in case of shotgun.
**Large Capacity Feeding Device:** magazine, belt or drum that holds more than 10 rounds and more than 5 shotgun shells.
**Length of barrel *or* barrel length:** the portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized which shall include the chamber.

**Machine gun**: a weapon of any description by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a submachine gun.
**Semiautomatic**: capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.
**Violent Crime**: any crime involving use, attempted use, or threatened use of force against a person that is punishable by more than one year in prison.
**Weapon**: generic term for any rifle, shotgun or firearm.

**Section 9:** Amends section 122 of Chapter 140 by specifying that the "investigation" currently required of an applicant seeking to obtain a license to sell, rent or lease firearms, rifles, shotguns or machine guns, or to be in the gunsmith business, shall include any criminal history.

**Section 10:** This is a technical amendment to section 122 implying that all gun dealers must maintain a business address, to be state on the application.

**Section 11:** Amends section 122 of Chapter 140 by requiring the licensing authority to forward a copy of each application to obtain a gun shop or gunsmith license, to the executive director of CHSB.

**Section 12:** Amends section 122B of chapter 140 by requiring a criminal background check of anyone seeking to obtain a license to sell ammunition.

**Section 13:** Requires the licensing authority to whom the application to sell ammunition is made to forward a copy of any approved application to the executive director of CHSB.

**Section 14:** Amends section 123 of Chapter 140 by requiring a gun dealer to identify, in records currently required to be sent to CHSB, which sales involve Large Capacity Weapons.

**Section 15:** Amends section 123 of Chapter 140, by requiring gun dealers to submit sales records to CHSB via modem or other on-line link (requires dealers to acquire computers by September 1, 1999).

**Section 16:** This section prohibits gun dealers from delivering Large Capacity Weapons to persons who do not possess the appropriate Class "A" or "B" License to Carry or Possess Firearms (LTC) issued under section 131 of Chapter 140.

**Section 17:** This section requires gun dealers to observe restrictions on buyers' Permit to Purchase (PTP).

**Section 18:** This section prohibits the sale of any large capacity rifle, shotgun, or firearm or large capacity magazine to anyone without the appropriate LTC or PTP issued under sections 131, or 131A of chapter 140.

**Section 19:** This section adds six new conditions to the dealer's license:

(13) verify current validity of FID or LTC upon presentment and report invalid FID's or LTC's to licensing authority, and *may* confiscate expired FID's or LTC's; issue receipt for said card; inform licensee of his duty to renew said card; and forward expired card to appropriate licensing authority;

(14) post at the purchase counter a notice of law relating to the safe storage of weapons (exact wording of notice added by this act). The dealer shall also provide the same notice to every purchaser or transferee on paper;

(15) requires gun dealers to maintain permanent business address, prohibits operation out of residence (note: dealers of ammunition only may still operate from residence);

(16) forbids sale of federally banned assault weapons and large capacity magazines; allows enforcement on state/local level;

(17) requires dealers to notify CHSB of lost or stolen weapons forthwith, with complete description of the subject weapon;

(18-21 inclusive) forbids sale of "Saturday Night Specials" (cheap, inferior quality firearms that fail certain safety and firing tests). "Grandfather provision for those already lawfully owned within Commonwealth, see Bill Section 51.

**Section 20:** This section prohibits dealers from selling any weapons to persons that they are not entitled to possess under the restrictions of their FID, LTC, or PTP; places duty on dealer to recognize and comply with buyer's restrictions.

**Section 21:** Prohibits "mail-order" sales to non-commercial purchasers and requires "in-person" presentment of required FID, LTC or PTP (exemption for Dealer-to-Dealer transactions) at time of purchase. Also authorizes annual administrative inspections of commercial premises by licensing authority.

**Section 22:** Conditions weapons and ammunition sales by dealers at gun shows on observance of buyers' FID and LTC.

**Section 23:** Extends penalties imposed upon gun dealers for violation of new conditions on gun dealers' license as set forth in chapter 140, section 123 (prohibiting sale of federally banned assault weapons and "Saturday Night Specials".

**Section 24:** Enhances penalties imposed upon gun dealers who violate certain conditions of their licenses as set forth in section 123 of chapter 140, or person who sell, rent or lease a firearm, rifle, shotgun or machine gun without the appropriate dealer license. Under the new law, such a person is subject to imprisonment for not more than 2 and ½ years in a house of correction, nor more than 10 years in a state prison, or by a fine of not less than $1,000 nor more than $10,000, or both.

**Section 25:** Amends section 128A of chapter 140 which permits citizens of the Commonwealth to sell or transfer up to four weapons within any calendar year, without

requiring said persons to obtain a gun dealer license, by requiring the same record that must be submitted to CHSB by non-commercial seller be so submitted for *any transfer*.

**Section 26:** Requires record to be sent to CHSB for transfer of large capacity magazines, as well as weapons.

**Section 27:** Requires persons who sell or transfer weapons to another under section 128A of chapter 140 to include on the "proof of sale" form provided by the Executive Director of the CHSB, the weapon's designation as a large capacity weapon if applicable.

**Section 28:** Increases the penalty for the buyer who purchases a weapon from an unauthorized source and neglects to inform the CHSB of said purchase. The increased penalty is now a fine of $500-$1000 for a first offense, and imprisonment for up to 10 years for a subsequent offense.

**Section 29:** Creates new standards for FID cards and permits, under which, the possession of only:

*Non-Large Capacity Rifles and Shotguns:* Mandatorily issued unless disqualified. Disqualifying factors are:

1. convict or youthful offender in MA, unless conviction or release from incarceration, parole or probation, whichever last occurred, occurred more than 5 years prior. No restoration if conviction was for violent crime or drug trafficking;
2. convict or youthful offender in other state (with same criteria as above), unless civil rights (i.e. to vote, sit on a jury, and hold public office) have been substantially restored in that state. No restoration if conviction was for violent crime or drug trafficking;
3. ever institutionalized for mental illness (waived w/ physician's affidavit that illness should not affect ability to safely possess weapons);
4. ever treated or confined for drug addiction or habitual drunkenness (waived w/ physician's affidavit of cure, effective 5 years after such treatment or confinement);
5. under age 15;
6. between 15 and 18, unless applicant obtains parental consent;
7. an alien;
8. subject to any 209A protective order, or similar order in other state; or
9. subject of an outstanding arrest warrant.

For all FID cards, fingerprints sent to State Police for background check, who must check National Instant Background Check System (NICS) and other nationwide database files for protection orders and warrants. (Note: the NICS check is required to maintain exemption from Brady II, which becomes effective November 30, 1998.)

All applicants must also complete a firearms safety course approved by the Colonel of the State Police, unless FID issued solely for mace or pepper spray.

### Entitlements:

Holder may possess non-large capacity rifles and shotguns under current law; and may possess large capacity rifles and shotguns, as well as firearms, only at gun club under its Class "A" license issued under section 131 of chapter 140, or at a range or club under directs supervision of person w/ proper Class "A" or "B" License to Carry issued under section 131. A FID card shall not allow the holder to purchase any firearm (handgun) or any large capacity weapon. Further, a FID card may be issued solely for the purchase and possession of mace and pepper spray.

An FID card is not a defense to prosecution under section 10 of chapter 269 (Bartley-Fox Act) for unlawful possession of a large capacity rifle or shotgun, due to non-discretionary issue of FID card, but will exempt such person from the mandatory one year minimum provided under section 10 of chapter 269.

**Revocation:** A card may be revoked or suspended by the licensing authority for the occurrence of any event that would have disqualified the holder from being issued the card initially. Upon revocation, said card holder shall immediately surrender the card to the arresting officer who shall forward it to the licensing authority. An appeal does not stay the effect of the revocation.

**Appeal:** An applicant or holder aggrieved by a denial, revocation or suspension of a card may appeal to the district court within 90 days of receipt of notice of the decision unless the revocation is due to the imposition of a restraining order and the applicant has been afforded a hearing pursuant to such order.

**FID Card Form:** FID cards shall be in the form prescribed by the executive director of CHSB, and shall now include a photograph and fingerprint of the applicant.

**Knowingly Filing Application w/ False Information:** sets a $500-$1000 fine and/or 6 months-2 years in a house of correction.

**Four-Year Validity and Fees:** FID cards issued under this section shall be valid for 4 years and shall expire on the holder's birthday which occurs on or before 4 years from the date of issuance. The fee for a FID card application is increased to $25 with the licensing authority retaining $12.50 and the remaining deposited into the Firearms Record keeping Fund, created under section 2 of this bill.
- No fee for persons 70+ years of age;
- One time fee of $25 on initial application for FID issued solely for pepper spray or mace only (or similarly propelled liquid, powder or gas designed to temporarily incapacitate), thereafter, no fee upon renewal of application.

(Current fee is $2, but can be increased by licensing authority and is valid for life).

**Change of Residence:** Upon moving, a cardholder must notify the chief of police into whose jurisdiction he moves, in addition to the persons currently entitled to notice under 129B, and requires that notice of the new address shall be made by certified mail. Failure to notify shall be cause for suspension of the holder's FID card.

**Treatment of Expired FID's:** This section provides for a fine of $500-$5000 for persons in possession of a weapon whose FID card is invalid solely because of expiration. Rather than subjecting such persons to penalties under Bartley-Fox (mandatory minimum 1 year). This section does not, however, protect those whose FID cards have been suspended or revoked from the imposition of Bartley-Fox penalties, unless such suspension is due solely to one's failure to give proper notice of change of residence.

**Section 30:** Provides that failure to so report is cause for suspension or permanent revocation of FID or LTC; also provides penalties for failure to so report as required of individuals (non-dealers) under section 129C of chapter 140. First offense is a $200-$1000 fine, second offense is a $1000-$5000 fine.

**Section 31:** Amends section 129C, subsection (j) by granting a new resident or any returning Massachusetts resident who has been out of the commonwealth for a period of 180 consecutive days or more, 60 days to renew or obtain an FID or LTC upon returning to the commonwealth before being subject to fines or imprisonment. The law currently provides this 60-day grace period for new residents and persons returning from military service.

**Section 32:** Strikes provision in section 129C of chapter 140 which exempts those licensed in other states from the FID requirement for the purchasing of rifles and shotguns within the commonwealth.

**Section 33:** Further amends section 129C by prohibiting the sale of a firearm to anyone under the age of 21 (raising from 18). This brings MA law into compliance with the federal law on the sale of firearms to minors.

**Section 34:** This section prohibits the sale or transfer of Large Capacity Weapons to any person not in possession of a proper Class "A" or "B" License to Carry.

**Section 35:** This section affirmatively states that possession of a FID shall not entitle a person to possess a large capacity rifle or shotgun in violation of newly created subsection (m) of Section 10 of Chapter 269. A violation under this section, however, shall not subject the FID holder to the mandatory minimum sentence under c.269 Section 10(m). (See Section 70 of the bill.)

**Section 36:** Amends section 129D of chapter 140 by allowing a licensing authority to deliver all firearms, rifles, shotguns or machine guns surrendered or confiscated due to FID & LTC denials, revocations or suspensions to a licensed firearms dealer operating a bonded warehouse, on the condition that said licensing authority lacks adequate storage capacity. Storage charges are borne by the weapon owner.

**Section 37:** States that any weapon stored in a bonded warehouse may be auctioned, at the direction of the licensing authority following 1 year from date or surrender, or the dealer when storage has exceeded fair market value of weapon.

**Section 38:** This section prohibits the sale or transfer of a firearm (handgun) or ammunition therefor to anyone under 21 (raises from 18). Brings Commonwealth into compliance with Federal law.

**Section 39:** Amends section 130 of chapter 140 by increasing the penalty for persons engaged in the unlawful sale or furnishing of a rifle, shotgun or ammunition to any alien who does not hold a proper permit card, or the sale or furnishing to an alien or minor of a firearm, rifle, shotgun, machine gun or ammunition. The new penalty shall be imprisonment for not more than 2 ½ years in a house of correction, nor more than 10 years in a state prison; or a fine of not less than $1,000, nor more than $10,000, or both (current: $500 - $1,000).

**Section 40:** This section amends section 130, which allows a parent or guardian to furnish their child or ward who is at least 15 years of age a rifle or shotgun, by prohibiting such transfer of large capacity weapons.

**Section 41:** This section creates a dual class of licenses to carry: Class "A" and Class "B".

A Class "A" LTC shall entitle the holder to purchase, rent, borrow, possess or carry Large Capacity Firearms, Rifles and Shotguns* and all Non-Large Capacity Weapons. A Class "B" LTC shall allow carrying of only revolvers and other non-Large Capacity Firearms, unable to accept a Large Capacity Magazine (the word "Clip," though often used, is a misnomer), but allows the carrying or possession of Large Capacity Rifles and Shotguns.* (*Rifles and Shotguns may be carried for lawful purposes only such as hunting or sporting, but shall not otherwise be carried loaded on a public way.)

The licensing authority *may* issue a license, of either class, subject to restrictions as he deems proper, to a "suitable person" unless the person meets one of the following disqualifying conditions. The conditions are as follows:

1. ever convicted of, or adjudicated a youthful offender, anywhere for: (a) commission of a felony, misdemeanor with a sentence greater than 2 years or violent crime, (b) violation of any firearms law punishable by imprisonment, or (c) violation of any narcotic law;

2. ever institutionalized for mental illness (waived w/ physician's affidavit that illness should not affect ability to safely possess weapons);

3. ever treated or confined for drug addiction or habitual drunkenness (waived w/ physician's affidavit of cure, effective 5 years after such treatment or confinement);

4. under age 21;

5. an alien;

6. subject to any Chapter 209A protective order or similar order in other state; or

7. subject of an outstanding arrest warrant.

Entitlements:

*Class "A"*: may possess any Large Capacity Weapon for all lawful purposes, subject to restrictions imposed by licensing authority (e.g., sport & target only).

*Class "B"*: may possess non-Large Capacity Firearms (e.g. revolvers) and Large Capacity Rifles & Shotguns, subject to restrictions imposed by licensing authority (e.g., sport & target only). May not carry loaded Firearm in concealed manner.

May possess Large Capacity Firearms only at a gun club under its Class "A" LTC, or at a range or club under direct supervision of person w/ Class "A" LTC.

A Class "B" LTC shall not allow the holder to purchase any Large Capacity Firearm (e.g. Handgun).

The Colonel of State police may grant a Class "A" LTC to a lawfully incorporated shooting club for the purposes of, but not limited to, the possession, storage and use of Large Capacity Firearms. At least one shareholder must be qualified to be issued such license. No Large Capacity Firearm shall be removed from the premises, except, to transfer to a licensed dealer, transport to a gunsmith for repair, transport to another incorporated shooting club, attend an educational or historical event, hunt or surrender the firearm as provided under 129D.

No shooting club shall permit firing at human-like targets, except by police in training.

The licensing authority shall, within 30 days, respond to the applicant by either approving or denying the application. If applicant is aggrieved by a denial, revocation or suspension, he may, within 90 days file to obtain judicial review in the district court having jurisdiction over the city or town where the application was filed.

Imposes a fine, in lieu of imprisonment under Bartley-Fox, of $1,000-$5,000 for a Class "A" or "B" LTC, upon any individual who is in possession of a Firearm and whose license has expired, and who would otherwise be entitled to renewal. Any person found

by a law enforcement officer to have an expired license and is in possession of a Firearm shall have said Firearm confiscated by said law enforcement officer. Any confiscated weapon shall be returned to the owner only upon the renewal of expired license. The provision also exempts from Bartley-Fox those persons whose LTC's have been suspended solely on account of their failure to give proper notice of change of residence.

Four-Year Validity and Fees: LTC's issued under this section shall be valid for four years and shall expire on the holder's birthday which occurs on or before 4 years from the date of issuance. The fee for an application for an LTC is set at $25 with the licensing authority retaining $12.50 and the remaining deposited in the Firearms Record Keeping Fund (FRKF), created under section 2 of this act. (Current fee is no less than $10, but can, and is increased by licensing authority; valid for 5 years.) *No fee for renewals or applications of persons 70 years of age or older.

Advisory Board to Publish List of Large Capacity Weapons: A Gun Control Advisory Board shall be established to advise EOPS in the implementation of the new licensing scheme, and shall assist in the compilation and publication of a roster of Large Capacity Rifles, Shotguns, Firearms and Feeding Devices (e.g., magazines) subject to enhanced regulatory provisions of this act.

**Section 42:** Amends section 131A of chapter 140 by allowing Licensing Authority to impose restrictions on the firearm to be purchased w/ the PTP w/ regard to caliber & capacity.

**Section 43:** This section provides a fee for a PTP of $25, with the licensing authority retaining $12.50, and the remaining to the Firearms Record Keeping Fund (FRKF). (Current fee is $2, but can be increased by licensing authority, valid for 10 days.) No fee for persons 70 years of age or older.

**Section 44:** This section does the following:

(a) increases the fine from $100 to $500 for those who unlawfully carry a firearm (not under direct control) in their vehicle- e.g., leaving said firearm on the seat of the vehicle;

(b) prohibits carrying loaded Firearm in vehicle under Class "B" LTC; gun must be unloaded and locked up. Violation = $500.

(c) prohibits possession of Large Capacity Rifle or Shotgun in vehicle unless in trunk or locked case/container. Violation = $500 - $5,000.

**Section 45:** Amends section 131E by inserting the following:

**Rifles & Shotguns:**
Any 18 year-old may purchase any non-large capacity rifle, shotgun or appropriate feeding device (magazine) only upon presentment of:
   1.   FID (or proof of exempt status under 129C), or

    2. Class "A" or "B" LTC

Large Capacity Rifles, Shotguns and Magazines shall only be purchased with:
    1. Class "A" or "B" LTC.

No rifle, shotgun or feeding device shall be sold to anyone under 18; and no large capacity rifle, shotgun or feeding device shall be sold to anyone under 21.

**Firearms:**

Any 21 year-old resident may purchase a non-Large Capacity Firearm or appropriate Magazine only upon presentment of:
    1. Class "A" or "B" LTC, or
    2. Proper PTP with FID (or proof of exempt status under 129C)

Large Capacity Firearms and Large Capacity Feeding Devices (Magazines) may only be purchased with:
    1. Class "A" LTC, or
    2. Proper PTP with FID (or proof of exempt status under 129C)

**Section 46:** Amends section 131F by allowing the Colonel of State Police to issue to nonresidents and aliens a Class "A" or "B" LTC for the purposes of competition. The Colonel may impose any restriction(s) he deems proper. No license shall be issued to any person who meets one of the following disabling conditions:

    1. ever convicted of, or adjudicated a youthful offender, anywhere for: (a) commission of a felony, misdemeanor with a sentence greater than 2 years or violent crime, (b) violation of any firearms law punishable by imprisonment, or (c) violation of any narcotic law;

    2. ever institutionalized for mental illness (waived w/ physician's affidavit that illness should not affect ability to safely possess weapons);
    3. ever treated or confined for drug addiction or habitual drunkenness (waived w/ physician's affidavit of cure, effective 5 yrs. after such treatment or confinement);

    4. subject to any Chapter 209A protective order or similar order in other state; or

    5. subject of an outstanding arrest warrant.

    A license issued under this section shall not be used to purchase firearms in the Commonwealth. In order for a person to carry a Large Capacity Weapon or Large Capacity Feeding Device, the Colonel must issue a Class "A" license, however, the Colonel may issue a Class "A" License to Possess Large Capacity Rifles, Shotguns or both, as well as Firearms. This section also allows Colonel to issue a temporary license to any person (e.g. persons under 18 or 21) for sports competition only.

**Section 47:** This creates a new section in chapter 140 for the following subjects:

> Manufacturer's liability for defective weapons; Safe storage of weapons; Weapons Recordkeeping Trust Fund; Penalty for possession of federally banned assault weapons; Ban of and penalty for possession of covert weapons.

Also adds the following new sections:

**Section 131K.** Breach of Warranty; Consumer Protection: Imposes liability in tort upon a manufacturer, wholesaler, importer or dealer who fails to install a commercially available safety device designed to prevent the discharge of such weapon by unauthorized users. The failure to install said device shall constitute a breach of warranty under Article 2 of the Massachusetts UCC and shall trigger The Consumer Protection Act (G.L. c.93A). Liability is joint and several among members of distributive chain, and contributory or comparative negligence is no defense.

Exceptions to Liability: No manufacturer, wholesaler, importer or dealer shall be liable for the failure to incorporate a safety device if the injury:
(1) is self-inflicted, unless the injured is under the age of 15;
(2) if the injury is inflicted by the lawful owner or authorized user;
(3) is inflicted in the lawful exercise of self defense; or
(4) is inflicted by a co-conspirator in the commission of a crime.

No weapon issued to any law enforcement agency, member of the United States armed forces, or the organized militia of the commonwealth shall be subject to this provision; provided the weapon is distributed solely for use in connection with said duties, and said person is authorized to acquire, possess or carry such a weapon.

**Section 131I.** Liability; Safe Storage of Weapons: Imposes a requirement that any person who stores a firearm, rifle, shotgun, including but not limited to a large capacity weapon, or machine gun shall store said weapons in a locked container or equipped with a tamper-resistant trigger lock. If the violation of this section leads to the personal injury or death of the person as the result of a person under 18 gaining access to the weapon, and such access was foreseeable, said violation shall be evidence of wanton or reckless conduct (involuntary manslaughter standard) in a criminal or civil action brought against said violator. Penalties are as follows-

| | |
|---|---|
| Non-Large Capacity Weapon = | $500- $5,000; 0–10 yrs. |
| Large Capacity Weapon = | $1,000 - $10,000; 1 - 10 yrs. |
| Non-Large Capacity Weapon accessible to minor = | $ 1,000 - $10,000; 1-10 yrs. |
| Large Capacity Weapon accessible to minor = | $ 1,000 - $10,000; 1 - 10 yrs. |
| | $5,000 - $10,000; 2 ½ - 10 yrs. |

**Section 131 M.** Penalties for Possession of Federally Banned Assault Weapons: Provides penalties non-dealers only (dealers treated under 123 & 128):

1st Offense: $1,000 - $10,000 or 1 - 10 yrs. or both;
2nd Offense: $5,000 - $15,000 or 5 - 15 yrs. or both.

**Section 13IN.** Covert Weapons Ban: Penalties: Ban possession & sale of guns that are not detectable as weapons by x-ray, walk-through metal detectors or visual inspection (e.g. guns disguised as cigarette packs or lighters, pens, key chains, etc.)
1st Offense: $1,000 - $10,000 or 1 - 10 yrs., or both;
2nd Offense: $5,000 - $15,000 or 5 - 15 yrs., or both.

**Section 13IO.** Firearm Amnesty Program: This section creates a statewide firearms surrender program under which persons may return firearms to the commonwealth anonymously. The Colonel of the Massachusetts State Police shall promulgate rules and regulations governing the implementation of the program. Any citizen complying with the terms and conditions of this program shall be granted immunity by the Attorney General from criminal prosecution for the unlawful possession of said firearm. However, no other promises or representations are made by the attorney general or department of the state police. Any firearm surrendered under the program shall be test fired, and if any firearm is suspected to be evidence of a crime shall remain in police custody. If however no such evidence becomes apparent, said firearm shall be returned to its lawful owner, or destroyed if the lawful owner can not be located.

**Section 48:** This section authorizes any law enforcement officer who confiscates a weapon, in accordance to a surrender order issued under Chapter 209A, to place said weapon into a bonded warehouse.

**Section 49:** This section amends the current law by continuing a surrender order, if the return of any weapon would constitute a likelihood of abuse to the plaintiff. The suspension or surrender order shall remain in effect as long as the restraining order remains in effect. Violation of this section shall be fined by $5,000 or by imprisonment of not more than 2 ½ years in HOC or both.

**Section 50:** Enhances the penalties for use of a gun in the commission of an armed robbery:
Not less than 5 years for first offense; Not less than 15 years for second offense.

**Sections 51-52:** These sections enhance the possible sentence for assault on a person 60 years or older with intent to rob or murder.
First offense: Not less than 10 years;
Second offense: Not less than 20 years.

**Section 53:** Amends section 18B of chapter 265 (use of firearms while committing a felony) by stipulating that where the dangerous weapon used is a gun, punishment shall be not less than five years, nor more than 20 years.

**Sections 54-55:** Amends section 18A of chapter 265 (assault in a dwelling house) by stipulating that when a dangerous weapon used in the commission of this crime (c.265

Section 18A) is a gun, the penalty shall be not less than 10 years, without the possibility of parole.

**Section 56:** Amends section 18B of chapter 265 which imposes penalties for the use of a firearm in the commission of a felony. The section *increases the penalty* for using a firearm, rifle, shotgun or machine gun while committing or attempting to commit a felony from the current 2 years, to five years for a first offense. If said firearm, rifle or shotgun is a large capacity, then the punishment shall be not less than 10 years. The section also creates a mandatory minimum sentence for a second or subsequent offense under this section to 20 years (from 5). If, however, the second or subsequent offense is committed with a large capacity firearm, rifle or shotgun then the punishment shall be not less than 25 years.

**Section 57:** Enhances the possible sentence for conviction under c.265, Section 18C (home invasion), where the dangerous weapon used is a gun, to up to 20 years, with 10 years being a mandatory minimum sentence.

**Section 58:** Enhances the possible sentence for conviction under c.265, Section 21A (assault, confinement of a person for purpose of stealing motor vehicle), where the dangerous weapon used is a gun, to not less than 5 years.

**Section 59:** Enhances the possible sentence for conviction under c.269, Section 22 (Rape), where the dangerous weapon used is a gun, to not less than 10 years for a first offense, and between 15 years to life for a second offense.

**Section 60:** Enhances the possible sentence for conviction under c.265, Section 22A (Rape of a child), where the dangerous weapon used is a gun, to 10 years to life for a first offense, and 20 years to life for a second offense.

**Section 61:** Enhances the possible sentence for conviction under c.265, Section 24B (Assault of a child), where the dangerous weapon used is a gun, to 5 years to life for a first offense, and 20 years to life for a second offense.

**Section 62:** Enhances the possible sentence for conviction under c.265, Section 24 (Assault with intent to commit rape), where the dangerous weapon used is a gun, to 10 years to life for a first offense, and 15 years to life for a second offense.

**Section 63:** Enhances the possible sentence for conviction under c.265, Section 26 (Kidnapping), where the dangerous weapon used is a gun, to up to 10 years for a first offense, or not less than 20 years when committed with the intent to extort money or other valuable. Causing serious bodily injury or committing sexual assault during the commission of such crime carries a sentence of not less than 25 years.

**Section 64:** Enhances the possible sentence for conviction under c.265, Section 39(a) (Assault or battery for purpose of intimidation), where the dangerous weapon used is a gun, to up to 10 years.

**Section 65:** Enhances the possible sentence for conviction under c.266, Section 14 (Breaking and entering at night), where the dangerous weapon used is a gun, to a term of 15 years to life for a first offense, and 20 years to life for a subsequent offense.

**Sections 66-67:** Enhances the possible sentence for conviction under c.266, Section 17 and 18 (Entering a dwelling house at night, breaking and entering in day time, Breaking and entering a railroad car), where the dangerous weapon used is a gun, to not less than five years in prison.

**Section 68:** Bans possession of Sawed-Off Shotguns by striking out the exemption for those with an LTC under 269:10(c). Possession punishable under 269:10(a): 1-5 yrs. (1 yr. mandatory minimum).

**Section 69:** Removes provision from G.L., c. 269 § 10(h) that prevents unlawful possession charge from being considered "lesser included offense" of unlawful possession under G.L., c. 269 § 10(a), and allows prosecution for unlawful possession in one's home.

**Section 70:** Creates new subsection within Bartley-Fox (269:10(m)) with enhanced penalties for anyone who is in his possession, or under his control in a vehicle, a Large Capacity Rifle, Shotgun or feeding device but does not possess a Class "A" or "B" LTC; such person shall be punished by imprisonment for 2 ½-10 years (1 yr. mandatory minimum).

**Section 71:** Adds new sections to chapter 269:

Section 10F. (a). Prohibits sale, keeping or exposing for sale or transfer of any Large Capacity Weapon or Large Capacity feeding device to one who is over the age of 18, except as lawfully allowed. Imposes a punishment of imprisonment in a state prison for not less than 2 1/2 years but not more than 10 years for a first offense. Any subsequent violation of this section shall be subject to punishment of no less than five, nor more than 15 years. The minimum sentences set forth are mandatory minimum sentences and shall not be reduced or suspended.

(b). Creates a general prohibition on any person who transfers, sells, lends or gives a large capacity weapon or large capacity feeding device to a person under the age of 18. Imposes a punishment of imprisonment in a state prison for not less than 5 nor more than 15 years. The 5 year minimum is a mandatory minimum sentence. Any person over the age of 17 charged with violating this subsection shall not be eligible for probation as provided in section 87 of chapter 276.

Section 10G. Establishes enhanced penalties for persons who violate sections 10(a), (c) or (h) of ch. 269, relative to unlawful carrying of weapons, and who have been previously convicted of a "violent crime" or "serious drug offense" for not less than three nor more than 15 years. If said felon has two previous felony convictions the punishment shall be imprisonment in a state prison for not less than 10 nor more than 15 years. If said felon

has three previous felony convictions the punishment shall be imprisonment in a state prison for not less than 15 nor more than 20 years. Any person over the age of 17 charged with violating this subsection shall not be eligible for probation as provided by section 87 of chapter 276.

The minimum sentences set forth in this section are mandatory minimum sentences.

"Serious drug offense" is defined for purposes of this section as offense under federal controlled substances acts.

Section 10H. Creates a general prohibition for anyone to carry a *loaded* firearm while under the influence of intoxicating liquor or drugs. Any person convicted of a violation of this section shall be punished by imprisonment for a period not more than 2 ½ years, or by a fine of not more than $5,000, or both.

**Section 72:** (a). This section prohibits the carrying of a loaded Rifle or Shotgun on a public way unless the person is engaged in hunting and holds a hunting license issued under G.L., C. 131, § 51. Violation of this section carries a $500-$5,000 fine or imprisonment of not more than 2 ½ years. If said weapon is a Large Capacity Weapon and the person, simultaneously, possesses a large capacity feeding device, said person shall be fined $1,000-$10,000 or imprisonment of 1-10 years, or both.

(b). This section also prohibits any person from carrying on a public way an unloaded rifle or shotgun, unless said person is hunting or holds a license issued under G.L., c. 131, § 51, or the weapon is enclosed in a gun case. Violation of this section carries a $100-$1,000 fine. If said weapon is a Large Capacity Weapon and the person simultaneously possesses a Large Capacity feeding device, the penalties shall be the same as (a.). Any person in violation of (a) or (b) may be arrested without a warrant.

**Section 73:** This section sets forth a staggered schedule according to which all valid FID's and LTC's issued prior to the effective date of this act shall expire according to the birth date of each holder. The expiration period is staggered over a period of one year to allow for the examination of license renewals as well as data entry and current recordkeeping. Notice of expiration shall be provided to the holders by the most effective means possible (e.g. through the registry of motor vehicles).

The fee for such a surrendered LTC will be prorated by deducting $5 for each remaining year of life on the LTC, although such license shall be renewed for not less than $30. Moreover, the licensing authority shall receive no less than 50% from such fees with the remainder going to the Firearms Record Keeping Fund.

Any lawful owner of a Large Capacity Rifle, Shotgun or feeding device, before the effective date of this act, shall apply for a Class "A" or "B" LTC. Unless the applicant is disqualified under the section, said FID shall be issued, provided that the Large Capacity Weapons so owned were acquired prior to the date of passage of this act. If a Class "A" or "B" LTC is not issued, all Large Capacity Rifles, Shotguns or feeding devices shall be

surrendered in accordance with M.G.L. c.140:129D. Any person who acquires these same weapons after the effective date of this act must hold a Class "A" and "B" LTC.

Any lawful owner of a Rifle, Shotgun, ammunition or feeding device, that is not a Large Capacity Rifle, Shotgun or Large Capacity Feeding Device, on the effective date of This act, shall apply for an FID. If said FID is not issued then all Rifles, Shotguns and ammunition and ammunition feeding devices must be surrendered in accordance with M.G.L. c.140:129D.

Any lawful owner of a Large Capacity Firearm or feeding device, on the effective date of this act, shall apply for a Class "A" LTC. Unless the applicant is disqualified under the section, said LTC shall be issued, provided that the Large Capacity Weapons so owned were acquired prior to the date of passage of this act. If said LTC is not issued, then all Firearms, ammunition and feeding devices shall be surrendered in accordance with MGL c. 140:129D.

Any lawful owner of a Firearm or feeding device, that is not a Large Capacity Firearm or Large capacity feeding device, on the effective date of this act, shall apply for a Class "B" LTC. Unless applicant is disqualified, said LTC shall be issued. If applicant is disqualified then all Firearms, ammunition and feeding devices shall be surrendered in accordance with M.G.L. c. 140:129D.

Any lawful owner of a firearm or feeding device acquired with a PTP, shall apply for an FID. If either FID is issued then the permit holder shall be entitled to retain possession of said firearm or feeding device. If FID is not issued then the permit holder shall surrender all firearm, ammunition and feeding devices in accordance with MGL c. 140:129D.

Any person who owns or possesses any weapon after the effective date of this act must posses the proper type of license. The Secretary of Public Safety and the Executive Director of the Criminal History Systems Board shall promulgate rules and regulations necessary to implement the provisions of this act.

**Section 74:** Requires that the Governor appoint the initial members of the advisory board established in section 41, within 30 days of the effective date of this act.

**Section 75:** Requires EOPS to expend $250,000 for the training and implementation of the firearms information system.

**Section 76:** This section requires EOPS to conduct a study of crime statistics relative to violent crimes and crimes involving firearms within the Commonwealth.

**Section 77:** Makes effective the requirement of gun dealers to send sales records to CHSB via modem or on-line link on 9/1/99.

**Section 78:** This section provides a grace period to September 1, 1999, for gun dealers to comply with the business address requirement.

**Section 79:** Allows any such weapon lawfully owned under any Massachusetts license (LTC, FID (purchased w/ PTP), or Dealer's license) to be owned, possessed and transferred freely. Purpose is to deter illegal transfers to unlicensed buyers.

**Section 80:** Allows persons 18-20 yrs. of age who currently own Firearms or Large Capacity Rifles or Shotguns (for all of which the amended licensing provisions require minimum age of 21) to keep them, but such person cannot purchase any weapons for which an LTC or PTP or is required.

## RECOMMENDATION:                    SIGN

EOPS, in consultation with the Criminal History Systems Board (CHSB) recommends that the Governor sign Senate Bill 2276.

As the agency most affected by this act, CHSB has thoroughly reviewed the legislation and fully recognizes the impact it will have on their daily operations, particularly the Firearms Records Bureau.

Section 2 of the bill, which establishes a Firearms Recordkeeping Trust Fund made up of half of all licensing fees collected, will provide CHSB and the State Police with administrative and personnel costs associated with implementing this legislation.

**Please Note:** this section specifies that not more than $400,000 per fiscal year shall be provided to CHSB and the State Police for such administrative costs. It may be important to note that in the future a supplemental budget may be needed if the costs substantially exceed this amount.