**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 1:16-cv-10181-FDS**

| | |
|---|---|
| **DANNY WENG, CHRISTOPHER HART, MARKUS VALLASTER, SARAH ZESCH, JOHN STANTON, MICHAEL GOULD, and COMMONWEALTH SECOND AMENDMENT, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department, and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department,**<br><br>Defendants. | **LEAVE TO FILE GRANTED PURSUANT TO NOV. 7, 2016 SCHEDULING ORDER [ECF NO. 23] AND FEB. 17, 2017 ORDER OF COURT [ECF NO. 35]** |

### DEFENDANT WILLIAM B. EVANS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

**I.   INTRODUCTION**

Defendant William B. Evans ("Commissioner Evans") hereby replies to Plaintiffs' Opposition to Defendant Evans' Motion for Judgment on the Pleadings ("Plaintiffs' Opposition" or "Plaintiffs' Opp'n"). ECF No. 36. Briefly, Plaintiffs' Opposition struggles unsuccessfully against two uncontested and determinative facts. First, First Circuit and Massachusetts Courts have held that the Second Amendment does not confer the right to an unrestricted Class A license to carry firearms. Second, Plaintiffs do not allege that they have pursued the available state law remedies expressly provided in Mass. Gen. Laws c. 140, § 131 ("Section 131"). What is more, Plaintiffs in effect concede the failure of their equal protection claim. In the end,

Plaintiffs' Amended Complaint fails on its own terms, and therefore, Plaintiffs' repeated requests for discovery, in addition to being out of place, are irrelevant to the resolution of Commissioner Evans' Motion for Judgment on the Pleadings.

## II.     ARGUMENT

### A. First Circuit and Massachusetts Courts have plainly held that the Second Amendment does not confer the right to an unrestricted Class A license.

#### 1. There is no Second Amendment right to an unrestricted Class A license.

The First Circuit and Massachusetts Courts have plainly held that the Second Amendment does not confer the right to an unrestricted Class A license. It is true that the First Circuit has not yet determined the full scope of the Second Amendment outside the home, but First Circuit and Massachusetts courts have nevertheless consistently held that there is no Second Amendment right to an unrestricted Class A license. In Hightower v. City of Boston, the First Circuit held that the denial of an unrestricted Class A license did not violate the Second Amendment. 693 F.3d 61, 72-73 (1st Cir. 2012). The Court reasoned that such licenses entitle their holders to carry concealed firearms, and this right is not protected by the Second Amendment. Id. The District Court's opinion in Hightower, which the First Circuit affirmed, is even clearer on this point, finding that "as a matter of law, Rene E. makes clear that post-Heller the Second Amendment cannot be interpreted to confer a right to an *unrestricted* Class A license, which permits both concealed carrying and the possession of high-capacity firearms[.]" Hightower v. City of Boston, 822 F. Supp. 2d 38, 54 (D. Mass. 2011) (emphasis in original), aff'd, 693 F.3d 61, 87 (1st Cir. 2012); see also Morin v. Leahy, 189 F. Supp. 3d 226, 234, 236 (D. Mass. 2016); Chief of Police v. Holden, 470 Mass. 845, 853 (2015) ("[W]e conclude that the denial of a Class A license to carry a concealed firearm, or the revocation or suspension of a Class A license, falls outside the Second Amendment[.]").

2. **The availability of FID cards or Class B licenses does nothing to affect the conclusion that there is no Second Amendment right to an unrestricted Class A license.**

Plaintiffs' Opposition argues that changes to the licensing statutes have left Class A licenses as the only vehicle by which Plaintiffs may assert their Second Amendment rights. E.g., Plaintiffs' Opp'n, at 10, 13-15. Plaintiffs point to a 1998 law whereby FID cards no longer entitled a holder to possess a firearm in his home, as well as to a 2014 law whereby Class B licenses were eliminated as a category. Id. at 2-4 (citing 1998 Mass. Acts c. 180, § 29, codified at, Mass. Gen. Laws c. 140, § 129B(6), and 2014 Mass Acts c. 284); see also Commissioner Evans' Memorandum of Law, ECF No. 28, at 10 n.5 ("Comm'r's Memo.").

Even if Plaintiffs' assertions about FID cards are taken as true,[1] the issue has no relevance to the instant matter. FID cards are not at issue in this case, and the reference to FID cards in the Commissioner's Memorandum only served to establish that Plaintiffs' restricted licenses protect their right to possess and carry firearms in their homes, a point which Plaintiffs do not appear to contest. See Comm'r's Memo., at 7; see also Davis v. Grimes, 9 F. Supp. 3d 12,

---

[1] Plaintiffs argue that under Massachusetts law, an FID card does not authorize the possession of a handgun in the home. Plaintiffs' Opp'n, at 2-3. Although the language of Mass. Gen. Laws c. 140, § 129B(6) is in accord with Plaintiffs' interpretation, the Supreme Judicial Court has repeatedly noted in recent decisions that FID cards confer the right to possess and carry a handgun within the home. Chardin v. Police Comm'r, 465 Mass. 314, 315 n.5 (2013); Commonwealth v. Gouse, 461 Mass. 787, 799 n.14 (2012); Commonwealth v. Powell, 459 Mass. 572, 587-88 (2011); Commonwealth v. Johnson, 461 Mass. 44, 55 n.14, (2011); see also Brief of Defendant-Appellee Commonwealth of Massachusetts, Morin v. Leahy, No. 16-1904, Doc. No. 00117112718, at 41-44 (1st Cir. Feb. 1, 2017) (taking position on behalf of Commonwealth that FID card permits holder to possess and carry a firearm in the home); see also Powell v. Tompkins, 783 F.3d 332, 337 (1st Cir. 2015). As Chief Glidden writes, "[b]ased on the arguments in a court case in 2012, the Commonwealth now maintains that persons not disqualified may also obtain an FID card, which allows the holder to possess a firearm (i.e. handgun) or long gun at his residence or place of business[.]" Chief Ronald C. Glidden (Ret.) & Attorney John M. Collins, Law Enforcement Guide to Firearms Law, 66 (2nd Ed. 2015) (citing Powell, 459 Mass. at 587-88); but see id. ("[I]t appears that to possess a firearm in the home with an FID card, the person must . . . have . . . already had the firearm in the home prior to . . . 1998."). As described above, however, this dispute is not relevant to the arguments at hand.

17-18 (D. Mass. 2014); Pineiro v. Gemme, 937 F. Supp. 2d 161, 173 (D. Mass. 2013).  What is more, the cases cited for the proposition that the Second Amendment does not confer the right to an unrestricted Class A license were all decided after 1998.  Comm'r's Memo., at 8-10; see also Hightower, 693 F.3d at 72-73; Hightower, 822 F. Supp. 2d at 54; Morin, 189 F. Supp. 3d at 234, 236; Holden, 470 Mass. at 853.

Plaintiffs also argue that the elimination of the Class B license renders inapposite all of the above-cited case law regarding unrestricted Class A licenses, but this simply isn't so.  E.g., Plaintiffs' Opp'n, at 10.  The basis for these holdings was not the availability of more restrictive licenses, such as the FID card or the Class B license.  In each case, the basis for the court's holding that there is no Second Amendment right to an unrestricted Class A license was that such licenses entail the privileges of concealed carrying and possessing high-capacity firearms. Hightower, 693 F.3d at 72-73; Hightower, 822 F. Supp. 2d at 54; Morin, 189 F. Supp. 3d at 234, 236; Holden, 470 Mass. at 852-53.  This facet of the statute has not changed, and therefore the 1998 and 2014 changes referenced by Plaintiffs cannot impact the validity of the courts' decisions.  As Plaintiffs observe, Morin involved conduct that occurred after the 2014 amendments took effect, and the Court nevertheless held that the Second Amendment did not confer the right to an unrestricted Class A license.  Plaintiffs' Opp'n, at 14; Morin, 189 F. Supp. 3d at 234, 236.  While Plaintiffs characterize the analysis in Morin as "inexplicabl[e]," it is plainly explained insofar as the availability of other licenses was not the basis for the decision. See Plaintiffs' Opp'n, at 14.  Therefore, the availability of Class B licenses or FID cards does not impact Commissioner Evans' argument that the Second Amendment does not confer a right to unrestricted Class A licenses.

As a more practical matter, Commissioner Evans nowhere argues that Plaintiffs should instead apply for an FID card or Class B license. Rather, Commissioner Evans argues only that Plaintiffs' restricted Class A licenses protect their core rights under the Second Amendment and that the Second Amendment does not confer upon Plaintiffs the right to unrestricted Class A licenses. Comm'r's Memo., at 6-10. In sum, Plaintiffs arguments regarding the availability of Class B licenses or FID cards do nothing to address Commissioner Evans' argument that the Second Amendment does not confer a right to unrestricted Class A licenses.

### 3. In their Amended Complaint, Plaintiffs explicitly seek unrestricted Class A licenses.

Plaintiffs argue that they are nevertheless entitled to open if not concealed carrying, but in their Amended Complaint, Plaintiffs request unrestricted Class A licenses without any such qualifications. Plaintiffs' Opp'n, at 10-11; Amd. Compl., at ¶¶ 31, 34, 36, 39, 41-42, 50. On the contrary, the very purpose of Plaintiffs' Amended Complaint is to remove all restrictions on the individual Plaintiffs' Class A licenses. Amd. Compl., at ¶¶ 1, 31, 34, 36, 39, 41-42, 50. Indeed, Plaintiffs rest their equal protection argument squarely on the alleged availability of "unrestricted" licenses in various municipalities. Id. at ¶¶ 25-26, 67. Likewise, as to their Second Amendment claims, Plaintiffs' requested relief seeks declarations and injunctive relief not only as to the "Target & Hunting" restrictions imposed on the individual Plaintiffs, but also as to any other restrictions for "similar purposes." Amd. Compl., at Prayer for Relief, ¶¶ i-ii, iv-v. In sum, Plaintiffs seek unrestricted Class A licenses.

Therefore, for all the reasons described above, Commission Evans requests that this Court deny Plaintiffs' Second Amendment claims because there is no Second Amendment right to an unrestricted Class A license.

### B. Plaintiffs do not allege that they have pursued the available state law remedies expressly provided in Mass. Gen. Laws c. 140, § 131.

Plaintiffs do not allege that they have pursued the available state law remedies expressly provided in Section 131(f). Plaintiffs argue that their claims are ripe because it is "plain as day that Defendant's decision is final[.]" Plaintiffs' Opp'n, at 5. On the contrary, what is plain from the very face of the challenged statute is that Commissioner Evans' decision is not final but subject instead to the review of a state district court, which "may order the licensing authority to remove certain restrictions placed on the license." Section 131(f). Plaintiffs do not allege in their Amended Complaint or argue in Plaintiffs' Opposition that they pursued this relief. Instead, Plaintiffs' Opposition attempts unsuccessfully to avoid the issue with reference to authority that does not squarely address the issue. For example, Plaintiffs cite to the First Circuit's holding in Hightower that a challenge to Section 131 was ripe, but as Plaintiffs are forced to concede, the First Circuit's ripeness analysis in Hightower did not relate at all to the application of state court review under Section 131(f). Plaintiffs' Opp'n, at 5-6; Hightower, 693 F.3d at 71.

It is true, as Plaintiffs argue, that there is no general duty to exhaust state judicial or administrative remedies before pursuing a claim under 42 U.S.C. § 1983. Plaintiffs' Opp'n, at 7; Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982). Nevertheless, pursuing a claim under 42 U.S.C. § 1983 does not immunize Plaintiffs' claims from the doctrine of ripeness. See Hightower, 693 F.3d at 71; O'Connell v. Walsh, No. 1:15-cv-10096-DJC, 2015 WL 9581735, at *2 (D. Mass. Dec. 30, 2015). Indeed, the doctrine of ripeness has both jurisdictional and prudential components, and it is the prudential component of the fitness prong which asks "whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues; if the elements of the case are uncertain, delay may

see the dissipation of the legal dispute without need for decision." Crooker v. Grondolsky, 982 F. Supp. 2d 89, 91-92 (D. Mass. 2013) (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003)).

As described in Section A, supra, First Circuit and Massachusetts law preclude the Plaintiffs' claims for unrestricted Class A licenses, but it is nevertheless also true that the First Circuit has not yet determined the full scope of the Second Amendment outside the home. Davis, 9 F. Supp. 3d at 26. The largely unsettled scope of the Second Amendment in the First Circuit separates the instant case from the general rule regarding the exhaustion of state remedies. Instead, this case implicates the prudential considerations of the ripeness requirement, and the Court should exercise restraint, declining to rule on the constitutional question before Plaintiffs pursue the remedy available to them under Section 131(f), that is, the review of Plaintiffs' license restrictions by a state district court which may order the removal of restrictions found to be arbitrary or capricious. See O'Connell, 2015 WL 9581735, at *2 (holding Second Amendment claim unripe because plaintiff failed to make license application, the denial of which would be subject to state court review under Section 131(f)); see also Crooker, 982 F. Supp. 2d at 91-92; Hightower 693 F.3d at 86-87. The results of that review may obviate the need for a constitutional ruling in an emerging area of jurisprudence where the full scope of the Second Amendment is not clear. See Crooker, 982 F. Supp. 2d at 91-92. Therefore, Commissioner Evans requests that the Court dismiss Plaintiffs' claims as unripe.

**C. Plaintiffs' Opposition misstates the relevant standard of review, in effect conceding the insufficiency of Plaintiffs' equal protection claim and explicitly disclaiming a procedural due process claim.**

Plaintiffs' Opposition misstates the relevant standard of review, in effect conceding the insufficiency of Plaintiffs' equal protection claim and explicitly disclaiming a procedural due

process claim. Commissioner Evans' Motion for Judgment on the Pleadings seeks exactly that, i.e., judgment on the pleadings. This is not a motion for summary judgment, and therefore, any consideration of facts outside the pleadings is unnecessary and indeed improper. See Fed. R. Civ. P. 12(d).

Nevertheless, Plaintiffs' Opposition repeatedly and improperly asks for discovery to shore up the claims in Plaintiffs' pleadings. See Alphas Co., Inc. v. Kilduff, 72 Mass. App. Ct. 104, 114 (2008) ("Parties may not 'fish' for evidence on which to base their complaint in hopes of somehow finding something helpful to their case in the course of the discovery procedure.") (internal quotations omitted). Plaintiffs repeatedly complain that there is no evidence of Commissioner Evans' policies before the Court and even venture to speculate about possible policies, but as noted above, this is not a motion for summary judgment and such evidence would be unnecessary and improper in the consideration of a motion pursuant to Fed. R. Civ. P. 12(c). See Fed. R. Civ. P. 12(d); cf. Plaintiffs' Opp'n, at 15.

As to their equal protection claim, Plaintiffs expressly concede that they "have no basis on which to reach a conclusion about whether the facts state a plausible claim premised on equal protection." Plaintiffs' Opp'n, at 16-17. Therefore, Plaintiffs' equal protection claim does not meet the pleading standard and must be dismissed. Pineiro, 937 F. Supp. 2d at 169 ("[F]actual allegations must be enough to raise a right to relief above the speculative level[.]") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Likewise, Plaintiffs expressly disclaim the existence of a procedural due process claim in their Amended Complaint, though this is not clear from the Amended Complaint itself, which in paragraphs 67 and 68 uses the term "arbitrary considerations" and baldly asserts Plaintiffs' "rights to due process."

For all the foregoing reasons, Commissioner Evans requests that the Court dismiss Plaintiffs' equal protection and due process claims.

## III. CONCLUSION

For all the foregoing reasons, and all the reasons described in Commissioner Evans Motion for Judgment on the Pleadings and supporting Memorandum of Law, ECF Nos. 27-28, Commissioner Evans respectfully requests that the Court dismiss with prejudice all counts against him in Plaintiffs' Amended Complaint, dismiss him as a party to the case, and deny Plaintiffs' requested relief.

**[*Signature on next page*]**

Dated:  February 27, 2017

Respectfully submitted,

WILLIAM B. EVANS, in his official capacity as Commissioner of the Boston Police Department,

By his attorneys:

Eugene L. O'Flaherty,
Corporation Counsel


/s/ Matthew M. McGarry
Matthew M. McGarry (BBO# 678363)
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4042
matthew.mcgarry@boston.gov

Peter M. Geraghty (BBO# 664197)
Special Assistant Corporation Counsel
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza
Boston, MA 02120
(617) 343-4550
peter.geraghty@pd.boston.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2017, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Matthew M. McGarry
Matthew M. McGarry