UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANNY WENG; CHRISTOPHER HART; MARKUS VALLASTER; SARAH ZESCH; JOHN STANTON; MICHAEL GOULD; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department; and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department, <br><br> Defendants. | CIVIL ACTION NO. 1:16-cv-10181-FDS |

PLAINTIFFS' RESONSE TO DEFENDANT
EVANS'S STATEMENT OF UNDISPUTD FACTS

Plaintiffs Danny Weng, Christopher Hart, Sarah Zesch, John Stanton, and Commonwealth Second Amendment, Inc. submit this response to Defendant William B. Evans's statement of undisputed fact (Dkt. # 69) pursuant to Rule 56(c) and Local Rule 56.1.

1. In assessing an applicant's proper purpose or reason for requesting an unrestricted Class A license, the Licensing Unit of the Boston Police Department ("Licensing Unit") conducts an individual, case-by-case analysis of each applicant, and its determination depends upon the reason or reasons supplied by the individual applicant.

   [Commissioner Evans' Answers to Interrogatories, Interrogatory No. 9 (Mar. 8, 2017) (attached hereto in relevant part as Exhibit 1); Coleman Dep. 25:20-26:17, 27:22-28:17 (July 18, 2017) (attached hereto in relevant part as Exhibit 2)]

   RESPONSE: Not disputed.

2. The Licensing Unit issues unrestricted licenses, as well as licenses with "Target & Hunting," "Sporting," and "Employment" restrictions, and it sometimes issues licenses with a combination of those restrictions.

-1-

[McDonough Dep. 49:9-50:23 (July 18, 2017) (attached hereto in relevant part as Exhibit 3)]

RESPONSE: Not disputed.

3. The scope of any restrictions imposed by the Licensing Unit is defined in the document entitled "LTC Restrictions and Definitions" and attached hereto as Exhibit 4.

   [Evans' Answers to Interrogatories, Interrogatory No. 5; McDonough Dep. 44:2-23; "LTC Restrictions and Definitions," COB000136 (attached hereto as Exhibit 4)]

   RESPONSE: Not disputed.

4. A person with a "Target & Hunting" restriction, or any other restriction issued by the Licensing Unit, can carry a firearm open or concealed on his person within the limitations of his restrictions. For "Target & Hunting," "Sporting," or "Employment" restrictions, a person can carry a firearm open or concealed on his person when going to or from the location of a permitted activity.

   [McDonough Dep. 81:19-87:18; "LTC Restrictions and Definitions," COB000136]

   RESPONSE: Not disputed.

5. The Boston Police Department does not have an internal written policy regarding the "proper purpose" or "reason" analysis.

   [McDonough Dep. 95:3-7]

   RESPONSE: Not disputed.

6. There are general guidelines used by the Licensing Unit to determine "proper purpose" or "reason" for issuing a license to carry with or without restrictions.

   [Evans' Answers to Interrogatories, Interrogatory No. 9; McDonough Dep. 87:19-89:17]

   RESPONSE: Not disputed.

7. The Licensing Unit issues unrestricted Class A licenses to otherwise qualified individuals who show "good reason to fear injury" that distinguishes them from the general population, and the Licensing Unit requires documentation to verify or support such claims.

   [Evans' Answers to Interrogatories, Interrogatory No. 9]

   RESPONSE: Not disputed.

8. The Licensing Unit also generally issues unrestricted Class A licenses to otherwise qualified individuals who are lawyers, medical doctors, full-time law enforcement officers who are active or who retired in good standing, and others whose job requires

them to carry a firearm. In each such case, the Licensing Unit will require documentation or take other steps to verify the applicant's occupation.

[Evans' Answers to Interrogatories, Interrogatory No. 9]

RESPONSE: Not disputed.

9. The Licensing Unit also issues unrestricted Class A licenses to otherwise qualified individuals who already possess unrestricted licenses.

   [Evans' Answers to Interrogatories, Interrogatory No. 9]

   RESPONSE: Not disputed.

10. For purposes of "good reason to fear injury," the Licensing Unit draws a distinction between victims of random crime and victims who were specifically targeted, with the former being less likely to establish "good reason to fear injury."

    [McDonough Dep. 93:15-94:1]

    RESPONSE: Not disputed.

11. The Licensing Unit generally does not define "good reason to fear injury" with regard to high-crime areas.

    [McDonough Dep. 94:2-7]

    RESPONSE: Not disputed.

12. Unless a special showing is made that an otherwise qualified applicant meets the criteria described paragraphs 7-9, supra, the Licensing Unit will generally issue a Class A license subject to a "Target & Hunting" restriction.

    [Evans' Answers to Interrogatories, Interrogatory No. 9]

    RESPONSE: Not disputed.

13. Applicants requesting an unrestricted license to carry a firearm (or those requesting a particular restriction or combination of restrictions) are permitted and instructed to submit a letter detailing their request, along with any supporting documentation, to the head of the Licensing Unit, Lt. Det. John McDonough. Commissioner Evans is the licensing official for the City of Boston, and he has delegated his authority to Lt. Det. McDonough. In Lt. Det. McDonough's capacity as head of the Licensing Unit, he serves as Commissioner Evans' designee for licensing firearms.

    [Coleman Dep. 19:21-20:20, 24:2-18, 27:22-28:17; McDonough Dep. 9:6-21; Affidavit of Lt. Det. J. McDonough, at ¶ 1 (Oct. 5, 2017) (attached hereto as Exhibit 5)]

    RESPONSE: Not disputed.

14. Lt. Det. McDonough reviews the letters and documents submitted with requests for unrestricted Class A licenses, and he makes an individual determination as to whether an applicant will receive an unrestricted Class A license.

    [Coleman Dep. 25:20-26:17, 27:22-28:17]

    RESPONSE: Not disputed.

15. The process for requesting an unrestricted Class A license is the same for first-time applicants as it is for renewal applicants, and first-time applicants are able to receive unrestricted Class A licenses.

    [Coleman Dep. 32:20-23; McDonough Dep. 101:11-103:3, 116:10-13]

    RESPONSE: Disputed in that Defendant's policy is to "issue[] unrestricted Class A licenses to otherwise qualified individuals who already possess unrestricted licenses," meaning that the process is significantly different for a renewal applicant who already has an unrestricted license. Otherwise, not disputed.

16. A written request for an unrestricted Class A license can be submitted simultaneous with the applicant's initial application at the time of the initial interview or at some point later.

    [McDonough Dep. 116:10-24; Coleman Dep. 20:15-20]

    RESPONSE: Not disputed.

17. The review and determination of requests for unrestricted Class A licenses can occur even before the applicant's initial license is issued.

    [Coleman Dep. 33:17-23, McDonough Dep. 116:10-24]

    RESPONSE: Not disputed.

18. Plaintiff Weng asserts the following as each and every fact entitling him to a license without the challenged restrictions:

    > Plaintiff Danny Weng is entitled to a license without a "Target & Hunting" restriction because: (1) he is a law-abiding citizen who met and continues to meet all applicable statutory requirements for the issuance of a license; (2) he communicated his desire for a license that would allow him to carry a handgun in public for the purpose of self-defense to the Licensing Unit at Defendant's agency; and (3) he is willing to comply with reasonable restrictions or requirements that might be imposed on his ability to do so.

    [Weng Answers to Interrogatories, Interrogatory No. 8 (Mar. 22, 2017) (attached hereto in relevant part as Exhibit 6)]

    RESPONSE: Not disputed.

19. Plaintiff Hart asserts the following as each and every fact entitling him to a license without the challenged restrictions:

> Plaintiff Christopher Hart is entitled to a license without a "Target & Hunting" restriction because: (1) he is a law-abiding citizen who met and continues to meet all applicable statutory requirements for the issuance of a license; (2) he communicated his desire for a license that would allow him to carry a handgun in public for the purpose of self-defense to the Licensing Unit at Defendant's agency; and (3) he is willing to comply with reasonable restrictions or requirements that might be imposed on his ability to do so.

[Hart Answers to Interrogatories, Interrogatory No. 8 (Mar. 22, 2017) (attached hereto in relevant part as Exhibit 7)]

RESPONSE: Not disputed.

20. Plaintiff Zesch asserts the following as each and every fact entitling her to a license without the challenged restrictions:

> Plaintiff Sarah Zesch is entitled to a license without a "Target & Hunting" restriction because: (1) she is a law-abiding citizen who met and continues to meet all applicable statutory requirements for the issuance of a license; (2) she communicated her desire for a license that would allow [her] to carry a handgun in public for the purpose of self-defense to the Licensing Unit at Defendant's agency; and (3) she is willing to comply with reasonable restrictions or requirements that might be imposed on her ability to do so.

[Zesch Answers to Interrogatories, Interrogatory No. 8 (Mar. 23, 2017) (attached hereto in relevant part as Exhibit 8)]

RESPONSE: Not disputed.

21. Plaintiff Stanton asserts the following as each and every fact entitling him to a license without the challenged restrictions:

> Plaintiff John Stanton is entitled to a license without a "Target & Hunting" restriction because: (1) he is a law-abiding citizen who met and continues to meet all applicable statutory requirements for the issuance of a license; (2) he communicated his desire for a license that would allow him to carry a handgun in public for the purpose of self-defense to the Licensing Unit at Defendant's agency; and (3) he is willing to comply with reasonable restrictions or requirements that might be imposed on his ability to do so.

[Stanton Answers to Interrogatories, Interrogatory No. 8 (Mar. 17, 2017) (attached hereto in relevant part as Exhibit 9)]

RESPONSE: Not disputed.

22. Following a theft, Mr. Stanton wrote a letter to the Licensing Unit, dated July 30, 2015, requesting an unrestricted Class A license. The letter again cited his desire for personal protection. There is no evidence that Mr. Stanton was specifically (as opposed to randomly) targeted by this theft.

    [See Stanton Dep. 78:3-9, 80:21-81:7, 83:9-84:4 (June 5, 2017) (attached hereto as Exhibit 10); COB000109 (attached hereto as Exhibit 11)]

    RESPONSE: Not disputed.

23. The foremost purpose of Commonwealth Second Amendment, Inc. is to coordinate Second Amendment litigation against Massachusetts cities and towns.

    [Carlton Dep. 13:7-15 (July 19, 2017) (attached hereto as Exhibit 12)]

    RESPONSE: Disputed that the coordination of litigation is the "foremost purpose" of Comm2A, but not disputed that it is one of the purposes of Comm2A. When asked to name things that Comm2A "does," Mr. Carlton responded that "[f]irst and foremost [Comm2A] plan[s] and carr[ies] out litigation," and he then also identified an "educational mission" as a second thing that Comm2A "does." The import of this testimony was not that the coordination of litigation is the "foremost" organizational priority. In his declaration, Mr. Carlton has identified all of the organizational priorities: "education, research, publishing, and legal action focusing on the constitutional rights secured by the Second Amendment." See Dkt. # 64 at ¶ 3.

24. As an organizational plaintiff in this case, Comm2A sees its role as helping recruit and organize the individual plaintiffs, as well as representing the interests of its other members who are not named in the lawsuit.

    [Carlton Dep. 30:3-11]

    RESPONSE: Not disputed.

25. All of the individual plaintiffs in this case were made honorary members of Comm2A without their knowledge for purposes of this lawsuit. As of their depositions, Plaintiffs Weng, Hart, Zesch, and Stanton did not know that they were members of Comm2A, nor had they received any benefits of membership.

    [Carlton Dep. 33:22-35:22, 39:11-40:7, 42:13-43:21, 47:6-48:12, 50:8-52:4; Weng Dep. 104:14-18 (June 7, 2017) (attached hereto in relevant part as Exhibit 13); Hart Dep. 69:23-70:2 (June 7, 2017) (attached hereto in relevant part as Exhibit 14); Zesch Dep. 40:6-8, 72:23-24 (June 5, 2017) (attached hereto in relevant part as Exhibit 15); Stanton Dep. 102:13-14.]

    RESPONSE: Not disputed, but it should be noted that each Plaintiff has since chosen to accept the membership offers that Comm2A made to them and is a "knowing" member of the organization. See Dkt. # 64 at ¶¶ 5-7.

26. The Boston Police Department expired Plaintiff Dr. Markus Vallaster's license to carry on September 29, 2017. This was done at Dr. Vallaster's request so that Dr. Vallaster can apply for a license to carry in another municipality.

    [Aff. of J. McDonough, at ¶¶ 3-4]

    RESPONSE: Not disputed.

27. The Boston Police Department's policy with respect to issuing restricted and unrestricted Class A licenses to carry firearms is intended to promote public safety and prevent firearms violence in the City of Boston consistent with the purposes of the Massachusetts firearms licensing statutes.

    [Aff. of J. McDonough, at ¶ 2]

    RESPONSE: Not disputed.

28. Plaintiff Michael Gould does not allege any facts against Commissioner Evans or the City of Boston.

    [Amended Complaint, ECF No. 7, at ¶¶ 52-56 (Apr. 14, 2016)]

    RESPONSE: Not disputed.

Dated: October 24, 2017

          Respectfully submitted,

          **DAVID JENSEN** PLLC

          By: /s/ David Jensen
              David D. Jensen, Esq.
          111 John Street, Suite 420
          New York, New York 10038
          Tel: 212.380.6615
          Fax: 917.591.1318
          david@djensenpllc.com

          Patrick M. Groulx, Esq.
          BBO No. 673394
          Isenberg Groulx LLP
          368 W Broadway, Suite 2
          Boston, Massachusetts 02127
          Tel: 617.859.8966
          Fax: 617.859.8903
          pmgroulx@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 24, 2017.

/s/ David D. Jensen
David D. Jensen, Esq.