| | |
|---|---|
| DANNY WENG; CHRISTOPHER HART; MARKUS VALLASTER; SARAH ZESCH; JOHN STANTON; MICHAEL GOULD; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br>Plaintiffs, <br><br>-against- <br><br>WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department; and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department, <br><br>Defendants. | CIVIL ACTION NO. 1:16-cv-10181-FDS |

## PLAINTIFFS' RESONSE TO DEFENDANT O'LEARY'S STATEMENT OF UNDISPUTD FACTS

Plaintiffs Danny Weng, Christopher Hart, Sarah Zesch, John Stanton, and Commonwealth Second Amendment, Inc. submit this response to Defendant Daniel C. O'Leary's statement of undisputed fact (Dkt. # 75) pursuant to Rule 56(c) and Local Rule 56.1.

1. Chief O'Leary and Sargent Christopher Malinn are the two Brookline Police Officers who conduct firearms licensing in Brookline. Plf. 56.1, ex. 2.

   RESPONSE: Not disputed.

2. Sargent Malinn is the contact person and investigator for all firearms license applicants in Brookline. Sgt. Malinn gathers all of the facts, discusses the matter with applicants and answers their questions. Malinn Aff. ¶ 3.

   RESPONSE: Not disputed.

3. In the firearms licensing process, Chief O'Leary reviews all of the information about the applicant submitted to Sgt. Malinn and makes the decision whether or not to impose restrictions, or to reconsider a previous decision to do so. O'Leary Aff. ¶ 3.

RESPONSE: Not disputed.

4. When an applicant for a license to carry or a license holder wishes to meet with Chief O'Leary to discuss their application and/or license, he is always willing to do so. When an applicant or license holder wishes to provide Chief O'Leary with additional information he is always willing to accept and consider that information. O'Leary Aff. ¶ 4.

   RESPONSE: Not disputed.

5. From January 1, 2015 through the present, 17 people have requested that Chief O'Leary reconsider his decision to impose restrictions on their licenses. Of those 17 people, 3 people have been given unrestricted licenses and seven have had their restrictions modified. O'Leary Aff. ¶ 5.

   RESPONSE: Not disputed.

6. Since January 1, 2015, Chief O'Leary has placed the following restrictions on firearms licenses: target, hunting, sporting, employment, collecting, transport and in home. O'Leary Aff. ¶ 8. The in home restriction was imposed because it was specifically requested by the applicant. O'Leary Aff. ¶ 8. Except for the in home restriction, each of these restrictions allows license holders to carry a firearm outside of the home for self-protection consistent with the restriction. O'Leary Aff. ¶ 9. For example, a self-employed license holder with an employment restriction, like Mr. Gould, can carry outside of the home any time he is engaged in his business. O'Leary Aff. ¶ 9. Similarly, license holders with a sporting restriction, like Mr. Gould, can carry outside of the home while target shooting, competing at shooting events, hunting and while engaged in outdoor recreational activities such as camping, hiking and cross country skiing. O'Leary Aff. ¶ 9. During any time the license holder can carry the firearm, including when traveling to and from the permitted activity, the firearm can be used for self-defense. O'Leary Aff. ¶ 9.

   RESPONSE: Disputed that a "license holder can carry [a] firearm, including when traveling to and from the permitted activity, . . . for self-defense" because Defendant's policy is that a firearm must be unloaded and locked in a case during transportation to and from an authorized activity. See Pl. 56.1 Statement (Dkt. no. 58) at ¶ 18 and sources cited therein. Otherwise, not disputed.

7. The Brookline Police Department devotes more time and resources to reviewing firearm license applications than most if not all other cities and towns in Massachusetts. Because of the Department's and Chief O'Leary's careful attention to these applications and the applicants, within the Massachusetts licensing scheme Chief O'Leary provides the gun-owning community the rights secured by the Second Amendment while at the same time protects the public as much as possible given the reach of these rights. From his almost 40 year of experience as a police officer, Chief O'Leary knows that any time a gun is present, the risk to public safety is increased. By limiting the right to carry a firearm to those occasions when an applicant has stated in his or her application that they need a

firearm and supported that claim with some information, Chief O'Leary improves public safety in the Town of Brookline. O'Leary Aff. ¶ 6.

RESPONSE: Disputed that Defendant's policy "provides the gun-owning community the rights secured by the Second Amendment while at the same time protects the public as much as possible given the reach of these rights." Further disputed that "any time a gun is present, the risk to public safety is increased. By limiting the right to carry a firearm to those occasions when an applicant has stated in his or her application that they need a firearm and supported that claim with some information, Chief O'Leary improves public safety in the Town of Brookline." Whether or not Defendant's policies comport with the Second Amendment is the ultimate issue before the Court, and Defendant has not provided any empirical evidence to support its contention that the mere presence of firearms poses a risk to public safety, nor that Defendant's policies "improve[] public safety." Otherwise, not disputed.

8. On or about July 8, 2014, Michael Gould met with Sargent Malinn at the Brookline Police Station for the purpose of renewing his firearms license. Malinn Aff. ¶ __. He had been issued a license by the Town of Weymouth Police Chief on March 18, 2009, which was due to expire on November 20, 2014. The Weymouth license had the restrictions "Target Hunting Employment." Malinn Aff. ¶ 4.

    RESPONSE: Not disputed.

9. Mr. Gould is a professional photographer who operates his own photography business. Malinn Aff. ¶ 5.

    RESPONSE: Not disputed.

10. Sargent Malinn took information from Mr. Gould and filled out the application for his firearms license. Mr. Gould answered "yes" to question 10 on his application, which asks "Have you ever appeared in any court as a defendant for any criminal offense?" He further explained his answer by stating that in 1989 he had been charged with trespass on school property in Kingston, Massachusetts when participating in a senior prank and that the charges had been dismissed. Malinn Aff. ¶ 6.

    RESPONSE: Not disputed.

11. Mr. Gould sought a firearms license for "all lawful purposes," which means a license without restrictions. In the July 8, 2014 meeting Mr. Gould requested a license for the reasons that are set forth in his September 29, 2014 letter to Chief O'Leary. These reasons were restated in the Chief's decision letter dated October, 16, 2014. In the July 8, 2014 meeting Mr. Gould did not state that he sought an unrestricted license for any purpose other than those purposes set forth in his September 29, 2014 letter. Malinn Aff. ¶ 7.

    RESPONSE: Disputed to the extent it is suggested that Mr. Gould retracted his request for an unrestricted license. Otherwise, not disputed.

12. During the July 8, 2014 meeting, Sargent Malinn did not "instruct" Mr. Gould on what to write in his September 29, 2014 letter to Chief O'Leary nor did he instruct him on what information to submit. Mr. Gould told Sargent Malinn that he needed to carry a gun because of his work. In an effort to help Mr. Gould, Sargent Malinn suggested the type of information he could provide to Chief O'Leary to support this position. To the extent Mr. Gould is stating that Sargent Malinn misled him in some manner and it was his intent to do so, Sargent Malinn disagrees completely. If Mr. Gould had provided Sargent Malinn with other reasons why he needed a firearm for self-defense (other than his work), Sargent Malinn would have suggested the information he could have provided to support this. But in the July 8, 2014 meeting, Mr. Gould stated no other self-defense reasons why he was requesting to renew his firearms license for all lawful purposes. Malinn Aff. ¶ 8.

    RESPONSE: Disputed to the extent it is suggested that Mr. Gould retracted his request for an unrestricted license. Otherwise, not disputed.

13. After considering all of the information provided by Mr. Gould in the application process, Chief O'Leary offered Mr. Gould a license with "Sporting" and "Employment" restrictions. In an October 23, 2014 email, Sargent Malinn explained to Mr. Gould that the new license would expand his right to carry a gun. The "Sporting" restriction, in addition to allowing one to carry a gun for target shooting, competition and hunting, allows one to carry a gun during other outdoor recreational activities, such as camping, hiking and cross country skiing. Such a license was offered because it allowed Mr. Gould to carry a gun on all of the occasions when he indicated he wanted to carry a firearm (i.e. for target shooting and to protect himself while in possession of valuable works of art and camera equipment, which was, at times, in remote places). In his email, Sargent Malinn offered to proceed with the license renewal with the two restrictions. In his email response, Mr. Gould stated that Sargent Malinn should proceed with the renewal with the restrictions. Malinn Aff. ¶ 9.

    RESPONSE: Disputed to the extent it is suggested that Mr. Gould retracted his request for an unrestricted license or that the restrictions "allowed Mr. Gould to carry a gun on all of the occasions when he indicated he wanted to carry a firearm." Otherwise, not disputed.

14. A new license with the Sporting and Employment restrictions was issued to Mr. Gould on or about November 20, 2014. Mr. Gould did not appeal the license pursuant to Mass. Gen. Laws. Ch. 140, §131(f). Malinn Aff. ¶ 10.

    RESPONSE: Not disputed.

15. Since his license was issued, neither the Mr. Gould nor any representative of Mr. Gould has provided Chief O'Leary with any additional facts to support his position that he should receive an unrestricted license. O'Leary Aff. ¶ 7.

    RESPONSE: Not disputed.

Dated: October 24, 2017

       Respectfully submitted,

       **DAVID JENSEN PLLC**

       By: _____
           David D. Jensen, Esq.
       111 John Street, Suite 420
       New York, New York 10038
       Tel: 212.380.6615
       Fax: 917.591.1318
       david@djensenpllc.com

       Patrick M. Groulx, Esq.
       BBO No. 673394
       Isenberg Groulx LLP
       368 W Broadway, Suite 2
       Boston, Massachusetts 02127
       Tel: 617.859.8966
       Fax: 617.859.8903
       pmgroulx@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 24, 2017.

       /s/ David D. Jensen
       David D. Jensen, Esq.