**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 1:16-cv-10181-FDS

| |
|---|
| DANNY WENG, CHRISTOPHER HART, MARKUS VALLASTER, SARAH ZESCH, JOHN STANTON, MICHAEL GOULD, and COMMONWEALTH SECOND AMENDMENT, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department, and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department, <br><br>    Defendants. |

**LEAVE TO FILE GRANTED
JULY 19, 2017 [ECF NO. 51]**

## DEFENDANT COMMISSIONER EVANS' REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Defendant William B. Evans ("Commissioner Evans"),[1] in further support of his Cross-Motion for Summary Judgment, ECF No. 70, hereby replies to Plaintiffs' Opposition, filed on October 24, 2017, ECF No. 84. As the parties agree that there is no material difference between the policies at issue in the instant case and the policies upheld in Batty v. Albertelli, No. 15-cv-10238-FDS, 2017 WL 740989, at *13 (D. Mass. Feb. 24, 2017), the Court should uphold Commissioner Evans' policy on the same grounds. See Section II.A., infra. Moreover, as Plaintiffs argue that the essential issue is their right to publicly carry a loaded handgun,

---

[1] Under 42 U.S.C. § 1983, a lawsuit against Commissioner Evans in his official capacity is treated as a lawsuit against the City of Boston itself. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).

Commissioner Evans submits that the Second Amendment does not extend as far as Plaintiffs would have it and that the D.C. Circuit's contrary decision in Wrenn v. District of Columbia, 864 F.3d 650, 659, 667 (D.C. Cir. 2017), is inapposite. See Section II.B. and II.C., infra; cf. Plaintiffs' Opp'n, ECF No. 84, at 7-8. Finally, as Plaintiffs have effectively abandoned their equal protection claim and cite no material facts to support it, the Court should dismiss this claim. See Section II.D., infra. For these reasons, explained more fully below, the Court should allow Commissioner Evans' Cross-Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment, and dismiss with prejudice all claims against Commissioner Evans.

## II.  ARGUMENT

### A. The Court's Decision *Batty v. Albertelli* Ought to Be Dispositive Of The Instant Case.

Commissioner Evans argues that for purposes of this dispute, there is no material difference between his policy and the policies upheld in Batty v. Albertelli, No. 15-cv-10238-FDS, 2017 WL 740989, at *13 (D. Mass. Feb. 24, 2017). Evans' Mem., ECF No. 71, at 8-10. For their part, Plaintiffs agree and concede that "if accepted and applied again here," the Court's conclusions in Batty ought to dispose of this case in Commissioner Evans' favor. Plaintiffs' Mem., ECF No. 57, at 21; Plaintiffs' Opp'n, ECF No. 84, at 6. Plaintiffs nevertheless argue that the Court should revisit its decision in Batty in light of the D.C. Circuit's decision in Wrenn v. District of Columbia, 864 F.3d 650, 659, 667 (D.C. Cir. 2017). Plaintiffs' Mem., ECF No. 57, at 21-24; Plaintiffs' Opp'n, ECF No. 84, at 6, 11-16. For reasons previously explained and elaborated upon in Section II.C., infra, Wrenn is inapposite. Evans' Mem., ECF No. 71, at 14-15. Therefore, as in Batty, the Court should hold that Commissioner Evans' firearms licensing policy does not violate the Second Amendment because it is substantially related to the important governmental objective of public safety. Id. at 6-10.

### B. The Second Amendment Does Not Entitle Plaintiffs To Publicly Carry Loaded Firearms In The City Of Boston For The Purpose of Self-Defense.

In arguing the scope of the Second Amendment, Plaintiffs assert an extremely broad right to carry loaded handguns in public. Plaintiffs' Opp'n, ECF No. 84, at 7-8. For his part, Commissioner Evans has shown that there is no Second Amendment right to the unrestricted Class A licenses sought by Plaintiffs. Evans' Mem., ECF No. 71, at 10-15. In their Opposition, however, Plaintiffs rejoin that they are not necessarily seeking all privileges attendant to an unrestricted Class A license. Plaintiffs' Opp'n, ECF No 84, at 7-8. Rather, Plaintiffs are asking the Court to recognize a right to carry loaded handguns in public, and they see the unrestricted Class A license as the only license available that authorizes such carrying. Id.; cf. Hightower v. City of Boston, 693 F.3d 61, 71 (1st Cir. 2012).

But Plaintiffs' claims must be analyzed in accordance with U.S. Supreme Court and First Circuit precedent. Neither Court has directly decided the scope of the Second Amendment, if any, outside the home. E.g., Morin v. Leahy, 862 F.3d 123, 125 n.2 (1st Cir. 2017); Powell v. Tompkins, 783 F.3d 332, 348 (1st Cir. 2015). Nevertheless, binding precedent provides guidance for analyzing Plaintiffs' claims about the scope of the Second Amendment and compels the conclusion that Plaintiffs are not entitled to their requested relief.

### 1. Plaintiffs Effectively Seek To Publicly Carry Loaded Firearms For Any Purpose Whatsoever, And This Relief Is Precluded By The Language Of Heller.

At the broadest level, the U.S. Supreme Court has held "unequivocally" that "the Constitution does not create a right to carry a firearm 'in any manner whatsoever and for whatever purpose.'" Pineiro v. Gemme, 937 F. Supp. 2d 161, 174 (D. Mass. 2013) (quoting District of Columbia v. Heller, 554 U.S. 570, 626, 630 (2008) and McDonald v. City of Chicago, 130 S. Ct. 3020, 3036, 3047 (2010)). Nevertheless, this is in essence the relief Plaintiffs seek.

The right to carry a firearm for self-defense is in effect the right to carry for any purpose whatsoever. Indeed, certain Plaintiffs explicitly stated that they sought licenses to carry for all lawful purposes. Plaintiffs' Mem., ECF No. 57, at 12, 15. Because Plaintiffs in effect assert a right to carry firearms for any purpose whatsoever, their claims are barred by the language of Heller.

### 2. First Circuit Decisions Regarding The Scope Of The Second Amendment Are Uniform In Their Refusal To Expand Heller Beyond Its Limited Facts.

The First Circuit's decisions regarding the scope of the Second Amendment have been uniform in their reluctance to unduly expand the U.S. Supreme Court's holding in Heller beyond its limited facts. The Court explained that it has "hewed closely and cautiously to Heller's circumscribed analysis and holding." Powell, 783 F.3d at 347. Its decisions on the scope of the Second Amendment bear out the truth of this statement. Morin, 862 F.3d at 127 (holding that "denial of an application for a Class A License does not infringe upon the Second Amendment right to possess a firearm within one's home") (emphasis added); Powell, 783 F.3d at 347 ("flatly reject[ing]" an argument that Heller established a right "to keep and bear arms" unrelated to the home); Hightower, 693 F.3d at 72 (holding that "carrying concealed weapons outside the home" was outside the core of the Second Amendment); United States v. Rene E., 583 F.3d 8, 12, 16 (1st Cir. 2009) (finding ban on possession of handguns by juveniles did not violate Second Amendment because it was part of longstanding tradition and narrowly drawn).

Plaintiffs now ask this Court to ignore the First Circuit's caution and hold that the Second Amendment confers a right to publicly carry loaded handguns in the City of Boston. E.g., Plaintiffs' Opp'n, ECF No. 84, at 7-8. But to accept this position would be to ignore the guidance that is apparent from the First Circuit's decisions regarding the scope of the Second

4

Amendment. Instead, the Court should follow the First Circuit's guidance, "hew[ing] closely and cautiously to Heller's circumscribed analysis and holding." Powell, 783 F.3d at 347.

### 3. Plaintiffs' Requested Relief Is Outside The "Core" Of The Second Amendment.

Beyond its general caution against expanding Heller, the First Circuit has provided particular guidance regarding the "core" of the Second Amendment. In the First Circuit, "[i]t is now well-established 'that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment.'" Batty, 2017 WL 740989, at *8 (quoting Hightower, 693 F.3d at 72 and citing Powell, 783 F.3d at 347); cf. Plaintiffs' Opp'n, ECF No. 84, at 13-14. In Hightower, the First Circuit distinguished the plaintiff's interest in "carrying concealed weapons outside the home," finding it to be outside the "core" of the Second Amendment. 693 F.3d at 72. As this Court has observed, "[a]lthough Hightower did not consider the constitutionality of regulating the open carrying of weapons outside the home, the authority it cited did not distinguish between [concealed and open carrying], suggesting that the operative distinction was whether the individual asserted his Second Amendment right outside or inside the home." Batty, 2017 WL 740989, at *9. Under First Circuit precedent, Plaintiffs' requested relief is outside the "core" of the Second Amendment. This status strongly suggests that state regulation does not violate the Second Amendment. See Hightower, 693 F.3d at 73; Powell, 783 F.3d at 347.

### 4. The Challenged "Proper Purpose" Or "Reason" Requirement Does Not Implicate The Second Amendment Because It Is A Longstanding And Presumptively Lawful Regulatory Measure Under Heller.

More specifically, the U.S. Supreme Court's decision in Heller was extremely narrow, Kachalsky v. Cty. of Westchester, 701 F.3d 81, 88 (2d Cir. 2012), and explicitly excepted a non-exhaustive list of "presumptively lawful regulatory measures." Heller, 554 U.S. at 626-27,

5

627 n.26.  The First Circuit has likewise recognized that Heller did not impact longstanding, presumptively lawful restrictions.  Hightower, 693 F.3d at 73-74; Rene E., 583 F.3d at 12; Batty, 2017 WL 740989, at *8 ("Courts have interpreted Heller as delimiting the scope of the Second Amendment, placing regulations that are sufficiently rooted in history and tradition as to rise to the level of 'presumptively lawful' outside its protection.").

The "proper purpose" or "reason" standard challenged by Plaintiffs is just such a longstanding and presumptively lawful regulatory measure.  See Drake v. Filko, 724 F.3d 426, 431-34 (3d Cir. 2013) (holding that "justifiable need" requirement for carrying in public, enacted in 1924, was longstanding and presumptively lawful under Heller).  Plaintiffs acknowledge that the "proper purpose" or "reason" requirement in its essential form has been on the books in Massachusetts since 1906.  Plaintiffs' Mem., ECF No. 57, at 8.  Moreover, the requirement is in accord with the historically robust role that states have had in regulating the possession and carrying of firearms in public, which role is perfectly compatible with the Second Amendment. Kachalsky, 701 F.3d at 100 ("[E]xtensive state regulation of handguns has never been considered incompatible with the Second Amendment or, for that matter, the common-law right to self-defense."); Drake, 724 F.3d at 433; Wrenn, 864 F.3d at 669 (Henderson, J., dissenting); see also United States v. Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011) (noting "longstanding out-of-the-home/in-the-home distinction").

Indeed, the First Circuit has intimated, without deciding, that Massachusetts' regulation of the public carrying of firearms is presumptively lawful:

> Nowhere in its dual decisions did the Supreme Court impugn legislative designs that comprise so-called general prohibition or public welfare regulations aimed at addressing perceived inherent dangers and risks surrounding the public possession of loaded, operable firearms.  Rather, the Court attended to legislative substance and endorsed the continuing viability of a range of state firearms regulations without endeavoring to draw Second Amendment lines for state legislative

architecture.  See Heller, 554 U.S. at 626-27, 128 S. Ct. 2783; McDonald, 130 S. Ct. at 3047.  In fact, along its sojourn, the Court recognized that states have historically executed firearms regulation through general prohibition public safety laws.  See Heller, 554 U.S. at 631-32, 128 S. Ct. 2783.

Powell, 783 F.3d at 346 (discussing challenge to criminal procedure applications of licensing scheme).  The Massachusetts regulatory scheme, which expressly contemplates Commissioner Evans' policy, is just such a presumptively lawful and longstanding regulation as it applies to the public carrying of loaded firearms.  Therefore, the Court should find that Commissioner Evans' policy does not implicate the Second Amendment.

### 5. Commissioner Evans' Policy Does Not Implicate The Second Amendment Because It Is Narrowly Drawn.

Commissioner Evans' challenged policy does not implicate the Second Amendment because it is narrowly drawn.  In its 2009 decision in United States v. Rene E., the First Circuit held that a federal ban on the possession of handguns by juveniles did not violate the Second Amendment.  583 F.3d at 12.  The ban "[did] not offend the Second Amendment" because it was part of "a longstanding tradition" which was "left intact by the Second Amendment and by Heller."  Id. at 12, 16.  Interestingly, the First Circuit's decision was also predicated on its conclusion that the ban was "narrowly drawn"[2] because it contained "exceptions for self- and other-defense in the home, national guard duty, and hunting, among other things."  Id. at 16.  As a result, the Court refused the appellant's invitation to treat the ban as a complete ban akin to the one at issue in Heller.  See id. at 12, 13-14.

The logic of Rene E. has important implications for the instant case.  As with the ban in Rene E., Commissioner Evans' policy is not a complete ban.  See id.  First, it allows all license-

---

[2] Although the "narrowly drawn" language would otherwise suggest the application of means-end scrutiny, this Court has correctly observed that the First Circuit's analysis in Rene E. is "almost identical" to the analysis applied when determining the scope of the Second Amendment.  Batty, 2017 WL 740989, at *7.

7

holders to possess and carry firearms for defense of the home. Evans' SOF, ECF No. 72 at ¶¶ 2-3, Exhibit 4. Second, it contains exceptions for those who can show good reason to fear injury. Pls.' Resp. to Evans' SOF, ECF No. 85, at ¶ 7. Third, Plaintiffs' licenses all contain additional exceptions for target shooting and hunting. Plaintiffs' Mem., ECF No. 57, at 12-15; Evans' SOF, ECF No. 72 at ¶ 3, Exhibit 4. Fourth, exceptions are also made for applicants seeking sporting and employment-related use. Evans' SOF, ECF No. 72 at ¶¶ 2-3, Exhibit 4. As a result of these features, Commissioner Evans' licensing policy cannot be considered as a complete ban akin to the one at issue in Heller. See Rene E., 583 F.3d at 12, 13-14. In scope, it is more akin to the restriction at issue in Rene E., and the Court should find, consistent with that decision, that Commissioner Evans' policy therefore does not implicate the Second Amendment.

### 6. Under First Circuit Law, Plaintiffs' Second Amendment Claims Are Weakened By The Scope of The Privileges Attendant To An Unrestricted Class A License.

Under First Circuit law, Plaintiffs' claims are weakened by the scope of the privileges attendant to an unrestricted Class A license. Commissioner Evans has argued that Plaintiffs are not entitled to unrestricted Class A licenses because such licenses entail privileges that go far beyond what the Second Amendment protects. Evans' Mem., ECF No. 71, at 13. Plaintiffs responded that they do not specifically seek these privileges; rather, Plaintiffs seek to publicly carry loaded firearms. Plaintiffs' Opp'n, ECF No. 84, at 7-8. Nevertheless, an analysis of attendant privileges is part and parcel of the applicable case law.

The First Circuit has found that the scope of the license sought bears upon the strength of the Second Amendment claim at issue. Hightower, 693 F.3d at 71 ("That the license lost allowed carrying of large capacity weapons weakens the Second Amendment claim[.]"). The unrestricted Class A licenses sought by Plaintiffs are "the least restrictive license[s] in

Massachusetts," entitling holders to possess and carry large capacity firearms and to carry concealed firearms in public. Morin, 862 F.3d at 124 n.1. Both of these features are outside the protections of the Second Amendment. Hightower, 693 F.3d at 73; see Rene E., 583 F.3d at 12. Therefore, as Plaintiffs seek unrestricted Class A licenses, their Second Amendment claims are weakened. See Hightower, 693 F.3d at 71.

As described above, Plaintiffs effectively and impermissibly seek to publicly carry loaded firearms for any purpose whatsoever. First Circuit decisions have been uniform, however, in their reluctance to unduly expand Heller beyond its limited facts. Indeed, the relief requested by Plaintiffs is outside the "core" of the Second Amendment, and the challenged requirement is a longstanding, presumptively lawful, and narrowly drawn regulatory measure under Heller. Finally, the broad scope of unrestricted Class A licenses weakens Plaintiffs' Second Amendment claim. For these reasons, the Court should find that Commissioner Evans' challenged policy does not implicate the Second Amendment.

### C. The D.C. Circuit's decision in *Wrenn v. District of Columbia* is inapposite.

Commissioner Evans has previously shown that Wrenn v. District of Columbia, 864 F.3d at 667, is inapplicable to the instant case, most importantly because its conclusions depend upon a reading of Heller that is completely at odds with First Circuit precedent. Evans' Mem., ECF No. 71, at 14-15. The Wrenn Court read Heller to say that "carrying in public for self-defense" falls "within the core of the Second Amendment's protections." Wrenn, 864 F.3d at 657-59, 661. For their part, Plaintiffs claim that the First Circuit has not limited the core of the Second Amendment. Plaintiffs' Opp'n, ECF No. 84, at 13-14. But in the First Circuit, "[i]t is now well-established 'that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment.'" Batty, 2017 WL 740989, at *8 (quoting Hightower, 693

F.3d at 72 and citing Powell, 783 F.3d at 347). Moreover, the First Circuit has "flatly reject[ed]" any reading of Heller that would establish "the right to keep and bear arms . . . unrelated to the home." Powell, 783 F.3d at 347. As Wrenn's conclusions depend upon a reading of Heller that is completely at odds with First Circuit precedent, Wrenn is inapposite.

The Wrenn Court's refusal to apply standards of scrutiny in analyzing a similar policy is also incompatible with First Circuit precedent. Evan's Mem., ECF No. 71, at 15. Plaintiffs argue, however, that the First Circuit has not always applied standards of scrutiny in its Second Amendment analyses. Plaintiffs' Opp'n, ECF No. 84, at 14. They point to Rene E. as an example of the First Circuit engaging in historical analysis rather than applying means-end scrutiny. Id. at 14-15. But as this Court observed in Batty, the First Circuit's analysis in Rene E. is perfectly consistent with the use of means-end scrutiny. Batty, 2017 WL 740989, at *7. The First Circuit's holding in Rene E. was that the law at issue "was one of the 'longstanding prohibitions' that Heller did not call into question." Id. (emphasis in original). Because the First Circuit found that the law was not implicated at all by Heller, there was no need to apply standards of scrutiny. See id.

What is more, the First Circuit's holding in Rene E. demonstrates an additional reason why Wrenn is inapposite. The holding in Wrenn rests upon the panel's characterization of the law at issue as a type of "total ban" in the mold of the ban struck down by Heller. Wrenn, 864 F.3d at 666. In Rene E., the First Circuit contemplated a firearms ban that contained exceptions for home defense and hunting. 583 F.3d at 16. As a result, the First Circuit refused to treat the ban as a complete prohibition akin to the one at issue in Heller. Id. at 12, 13-14. Following Rene E., this Court should not treat Commissioner Evans' policy, with its similar exceptions, as a complete ban. The Court should therefore reject the contrary reasoning of Wrenn.

More broadly, Wrenn is at odds with First Circuit precedent because the First Circuit has "hewed closely and cautiously to Heller's circumscribed analysis and holding." Powell, 783 F.3d at 347. Unlike the First Circuit, Wrenn consciously expands the holding in Heller. Cf. Masciandaro, 638 F.3d at 475 (noting "the dilemma faced by lower courts in the post-Heller world: how far to push Heller beyond its undisputed core holding"). As the Fourth Circuit counseled in Masciandaro, there are serious reasons not to unduly expand the holding in Heller:

> To the degree that we push the right beyond what the Supreme Court in Heller declared to be its origin, we circumscribe the scope of popular governance, move the action into court, and encourage litigation in contexts we cannot foresee. This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights. It is not far-fetched to think the Heller Court wished to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square.

638 F.3d at 475-76. These reasons underscore the wisdom of the First Circuit's close adherence to the limited holding of Heller. See Powell, 783 F.3d at 347. Therefore, for all the foregoing reasons, the Court should refuse to apply to holding in Wrenn to the facts of the instant case.

### D. **Plaintiffs Fail To State An Equal Protection Claim.**

Commissioner Evans has argued that Plaintiffs' equal protection claim must fail because Plaintiffs do not establish disparate treatment, because Plaintiffs are not part of a suspect or quasi-suspect class, and because Commissioner Evans' actions survive rational basis scrutiny. Evans' Mem., ECF No. 71, at 16-17. In Opposition to Commissioner Evan's Cross-Motion for Summary Judgment, Plaintiffs admit that their "focus" is not on equal protection but on the Second Amendment. Plaintiffs' Opp'n, ECF No. 84, at 17. Plaintiffs also misstate the applicable standard by arguing that Commissioner Evans has "not established that relief is unavailable under the Equal Protection Clause[.]" Id. Moreover, Plaintiffs cite no facts in support of their equal protection argument. Id.

11

At summary judgment, however, "the nonmoving party may not rest upon mere allegations or denials . . . , but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [it] would bear the ultimate burden of proof at trial." Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 152 (1st Cir. 2009) (internal quotations omitted). As Plaintiffs cite no facts to establish the elements of their equal protection claim, their "cursory" claim should be deemed waived. See Hightower, 693 F.3d at 83. Even if the argument is not waived, Plaintiffs have certainly failed to meet their burden, and the Court should dismiss their equal protection claim with prejudice. See id.

### III. CONCLUSION

For all the foregoing reasons, and for all the reasons provided in Defendant Commissioner Evans' Cross-Motion For Summary Judgment And Opposition to Plaintiffs' Motion For Summary Judgment, ECF No. 70, as well as his supporting Memorandum of Law, ECF No. 71, the Court should deny Plaintiffs' Motion For Summary Judgment, ECF No. 56, and allow Defendant Commissioner Evans' Cross-Motion For Summary Judgment, ECF No. 70, dismissing with prejudice all claims against Commissioner Evans.

Dated:  October 31, 2017

Respectfully submitted,

WILLIAM B. EVANS, in his official capacity as Commissioner of the Boston Police Department,

By his attorneys:

Eugene L. O'Flaherty,
Corporation Counsel

/s/ Matthew M. McGarry
Matthew M. McGarry (BBO# 678363)
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4042
matthew.mcgarry@boston.gov

/s/ Peter M. Geraghty
Peter M. Geraghty (BBO# 664197)
Special Assistant Corporation Counsel
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza
Boston, MA 02120
(617) 343-4550
peter.geraghty@pd.boston.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2017, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

Date:  October 31, 2017

/s/ Matthew M. McGarry
Matthew M. McGarry