UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:16-cv-10181-FDS

|  |  |
|---|---|
| DANNY WENG, CHRISTOPHER HART, MARKUS VALLASTER, SARAH ZESCH, JOHN STANTON, MICHAEL GOULD and COMMONWEALTH SECOND AMENDMENT, INC., Plaintiffs, v. WILLIAM B. EVANS, in his Official Capacity as Commissioner of the Boston Police Department, and DANIEL C. O'LEARY, in his Official Capacity as Chief of the Brookline Police Department, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANT CHIEF DANIEL C. O'LEARY'S FURTHER OPPOSITION AND REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGEMENT**

The defendant Town of Brookline Police Chief Daniel C. O'Leary, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby further opposes and replies to Plaintiffs' Opposition and Reply. In addition, Chief O'Leary renews his motion for summary judgment. In support thereof, Chief O'Leary provides the following:

**I. INTRODUCTION**

Plaintiffs continue to insist, over and over in their Reply Brief, that because Chief O'Leary has issued plaintiff Michael Gould, the only Brookline plaintiff, a firearms license with restrictions, Chief O'Leary has denied him the ability to carry handguns in public for the purpose of self-protection. With all due respect, Plaintiffs have this completely backward. Plaintiff Gould was granted a license precisely for self-protection outside of his home. Nevertheless, because this fact does not square neatly with the plaintiffs' argument that Chief O'Leary's practice is

1

equivalent to the "ensemble of Code provisions and police regulations" that the *Wrenn* court (*Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017)) concluded was a total ban on carrying firearms in public, the Plaintiffs repeatedly assert this errant premise in their Reply.[1]

## II. ARGUMENT

### A. Plaintiffs Have Not Presented Sufficient Facts to Support Their Sweeping Claim that Chief O'Leary's Licensing Practices Amount to a Categorical Denial or Total Ban on Carrying Firearms in Public for Self-Protection.

Plaintiffs have not met their burden of presenting the necessary facts to support their claim that Chief O'Leary's licensing practices categorically deny them from carrying firearms in public for self-protection. The Plaintiffs have established, using a subpoena to the Massachusetts Department of Justice Criminal Information Services, that 35.6 percent of the licenses issued by Chief O'Leary between January 1, 2015 and July 18, 2017 were unrestricted. On its face, this is a far cry from a flat prohibition. Moreover, the Plaintiffs have failed to provide the data to show what percentage of the applicants in fact requested unrestricted licenses. If, for example, 72 percent of the applicant's requested unrestricted licenses, this would mean that 50 percent of those who requested unrestricted licenses were given them. In short, Plaintiffs' failure to provide this data renders their analysis of Chief O'Leary's licensing practices virtually meaningless.

In addition, notwithstanding Plaintiff's assertions to the contrary (See footnote 1), even restricted licenses enable license holders to carry handguns in public for the purpose of self-protection. For example, it is uncontroverted that Mr. Gould received his license so that he could

---

[1] "There is no dispute that the … Brookline Police Department[] presumptively issue LTCs subject to restrictions that do not allow individuals to carry handguns in public for the purpose of self-protection"; "Defendants' policies deprive Plaintiffs of the core of the Second Amendment's protection when they are away from their homes …. These policies could only be constitutional if the Second Amendment has no application outside the home." Plaintiffs Reply, p. 1. "The Issue Here is the Ability to Bear Arms in Public for the Purpose of Personal Protection – a Right Defendants Presumptively Deny to All"; "The second key point is that none of the restriction used by either Defendant allow a licensee to carry of [*sic*.] a handgun for the purpose of their own personal self-defense in public." Plaintiffs Reply, p. 2. "A flat prohibition on activities that the Constitution protects is unconstitutional without regard to the balance of competing interests." Plaintiffs Reply, p. 10.

protect himself while working. The Plaintiffs provide no facts to suggest that Mr. Gould, a professional photographer, has a studio inside his home. In fact, in his application he explained that he often works in remote places. It was precisely because of this work outside of the home, when he indicated that his need for self-protection was most acute, that he received his license with the employment restriction. Moreover, his license also has a sporting restriction, which allows him to carry a handgun when hunting, target shooting and engaged in other outdoor activities such as camping, hiking and cross-country skiing. When one is target shooting and hunting, a gun is a necessary tool to participate in the activity. For these activities, self-protection may be incidental as Plaintiffs have asserted. Plaintiffs Reply, p. 2. For the other outdoor activities, however, the need for the firearm is the license holder's perception of some danger in the areas where these activities occur. For these activities, self-protection, outdoors and in public, is the primary reason for carrying the firearm. In short, Plaintiffs' assertion that Mr. Gould is being completely denied the ability to carry a gun in public for self-protection is false. The Town concedes that Mr. Gould cannot bring his gun everywhere (*e.g.* to the Starbucks or Trader Joes in his Coolidge Corner neighborhood). It bears repeating, however, that Plaintiffs have provided no evidence whatsoever to support the position that Mr. Gould has a need to defend himself outside of his employment and outdoor activities.

    **B. The Standing Argument Raised by the Plaintiffs Is a Red Herring Intended to Divert the Court's Attention from the Reasonableness of the Massachusetts Regulatory Scheme and Chief O'Leary's Implementation of this Scheme.**

Plaintiffs miss the point, perhaps intentionally, in devoting a page of their brief to the issue of Mr. Gould's standing. Plaintiff Reply p. 3. As correctly pointed out by the Plaintiffs, Chief O'Leary does not raise standing his brief. He also does not contest that Mr. Gould requested a license for all lawful purposes and that he did not receive a license all lawful

purposes. The inclusion in Chief O'Leary's brief (p. 6) of the fact that the license granted to Mr. Gould allowed him to carry a gun on all of the occasion when he indicated he needed the gun, was meant to highlight how well Chief O'Leary's commonsense approach works. As stated in Chief O'Leary's brief,

> This approach provide[d] Mr. Gould the ability to carry, in general, when he wants while at the same time requiring him to secure his firearm in his home when he is done with these activities. The more a firearm is outside the home, the more likely it is that it will be stolen, fall into the wrong hands or be used inappropriately. In Chief O'Leary's opinion, restricting carrying rights in this manner improves public safety in the Town of Brookline. In this way the restrictions on Mr. Gould's license have been narrowly tailored to achieve the desired result of greater public safety.

Chief O'Leary's close reading of Mr. Gould's application amounts to a win-win in that it gave Mr. Gould the ability to carry a firearm in all of the circumstances when he indicated he needed it for self-protection, while at the same time safeguarding the public as much as possible given the reach of the Second Amendment.

### C. The Facts in *Wrenn* Are Readily Distinguishable from the Facts of this Case.

The Plaintiffs in their Reply try hard to make this case look like *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). For a variety of reasons, however, it does not work. This case is about Chief O'Leary exercising the discretion granted to him by Mass. Gen. Law c. 140, § 131; particularly, his practice of restricting some firearms licenses. *Wrenn* does not concern a police chief's practice, but rather a written "ensemble of Code provisions and police regulations." *Id.* at 656. As explained by the court:

> The challenged D.C. Code provisions <u>direct</u> the District's police chief to promulgate regulations <u>limiting</u> licenses for the concealed carry of handguns (the only sort of carrying the Code allows) to those showing a "good reason to fear injury to [their] person or property" or "any other proper reason for carrying a pistol." *Id.* § 22-4506(a)-(b). <u>The Code also limits what the police chief may count as satisfying these two criteria</u>, in the course of promulgating regulations and issuing licenses.
>
> To receive a license based on the first prong—a "good reason to fear injury"—applicants

> <u>must show</u> a "special need for self-protection distinguishable from the general community <u>as supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life.</u>" *Id.* § 7-2509.11(1)(A). The police chief's regulations <u>further limit</u> licenses granted on this basis to those who "allege, in writing, serious threats of death or serious bodily harm, any attacks on [their] person, or any theft of property from [their] person." D.C. Mun. Regs. tit. 24 § 2333.2-3.

*Wrenn* at 655-656 (Emphasis supplied). Importantly, these code provision and police regulations specifically "direct" and "limit" the ability of the police in the District of Columbia when issuing licenses to carry.

By contrast, as long as the applicant is not a "prohibited person," Mass. Gen. Law c. 140, § 131 grants Chief O'Leary the discretion to impose restrictions, but does not mandate it. The D.C. "ensemble" requires an applicant to "show a special need for self-protection … supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life." *Wrenn* at 655. (Internal quotations and citations omitted.) Licenses are further limited "to those who allege, in writing, serious threats of death or serious bodily harm, any attacks on [their] person, or any theft of property from [their] person." *Wrenn* at 656. (Internal quotations and citations omitted.) These mandates are radically different from Chief O'Leary's discretionary practice that results in greater than (and perhaps much greater than – we just do not know) 35.6 percent of the applicants requesting unrestricted licenses receiving them. Chief O'Leary's practice certainly does not create a "total ban" like what the District of Columbia's law was, it seems, "almost engineered to do." *Id.* at 667.

**D. Chief O'Leary's Practice Is Consistent with the Legal Analysis in *Wrenn*.**

The *Wrenn* decision recognizes that "need" is a valid consideration when determining whether to issue a license to carry. It provides,

> [T]he early cases cited in *Heller I* envisioned that law-abiding citizens as a general rule would be entitled to have and carry arms for self-defense. So the class of arms protected must include guns in common use; <u>and the class of citizens who can wield them must</u>

5

<u>include those with common levels of competence and responsibility—and need</u>.

*Id.* at 665. As stated in his Answers to Interrogatories, Chief O'Leary will issue an unrestricted license to an applicant upon a showing of need, which he described as including "good reason to fear injury to his person or property outside of his home at almost any time" or "in many circumstances." Plaintiffs 56.1, Exhibit 2, pp. 6 and 9. Keep in mind, however, that this is the showing of need for an unrestricted license. Licenses with restrictions, which, as set forth above, also provide the ability to carry outside of the home for self-protection, are readily issued by Chief O'Leary. Thus, Chief O'Leary's practice of requiring that applicants show some level of need to obtain firearms licenses to carry is entirely consistent with *Wrenn*.

### III. CONCLUSION

For the reasons set forth above, Chief O'Leary renews his opposition to Plaintiffs' Motion for Summary Judgment and requests that this court grant his Motion for Summary Judgment.

                                                              Respectfully submitted,

                                                              Defendant DANIEL C. O'LEARY in his
                                                              Official Capacity as Chief of the Brookline
                                                              Police Department,
                                                              By his attorney,

                                                              <u>/s/ John Buchheit</u>
                                                              John J. Buchheit, Esq.
                                                              Office of Town Counsel
                                                               333 Washington Street, 6th Floor
                                                              Brookline, MA 02445
                                                               jbuchheit@brooklinema.gov
                                                              617-730-2190
                                                              BBO # 634717

Dated: October 31, 2017

**CERTIFICATE OF SERVICE**

I, John J. Buchheit, hereby certify that on this 31st day of October, 2017, I have served the foregoing document on all counsel of record by Electronic Mail.

/s/ John Buchheit